No. 81-493

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

IN RE THE MARRIAGE OF HAZEL J.
VANCE, k/n/a SUE STARFORD,

Petitioner and Respondent,

vs.

RUSSELL L. VANCE,

Appellant and Respondent.

---

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable Joseph B. Gary, Judge presiding.

Counsel of Record:

For Appellant:

Steven D. Nelson argued, Bozeman, Montana

For Respondent:

Steven Barrett argued, Bozeman, Montana

---

Submitted: March 4, 1983

Decided: June 6, 1983

Filed: JUN 6 1983

*Ethel M. Harrison*

Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

The District Court of the Eighteenth Judicial District issued an order September 29, 1980, dissolving the marriage of Hazel J. Vance and Russel L. Vance and changing Hazel's name to Sue Starford. Findings of fact, conclusions of law and an order distributing the marital estate were issued June 24, 1981. Amended findings and conclusions were issued July 15, 1981, pursuant to a motion by Russel Vance. Now, Russel Vance appeals the July 17, 1981, judgment which incorporated those amendments.

Sue Starford and Russel Vance were married in Tampa, Florida, on December 12, 1974. It was the third marriage for each of them, the second to each other. They moved to Montana immediately after their marriage and lived in several places temporarily before locating permanently in Bozeman, Montana, in June of 1976.

Mr. Vance was voluntarily retired at the time of the marriage and held only occasional odd jobs throughout the marriage. His time was spent managing his considerable financial assets, performing household chores, tending his ranch and hunting. Ms. Starford was unemployed until February of 1977, when she began working as a secretary at Montana State University. Her entire earnings were used for family expenses.

Substantial testimony was presented to the District Court concerning the assets each party brought into the marriage, the changes in those assets, the assets accumulated during the marriage and the value of all the assets at the time of dissolution.

At the time of the marriage, Ms. Starford owned a house in Tampa, Florida. Her house payments were approximately $65.00 a month, as she had acquired the house at a very low

2

interest rate. When she moved to Montana, Ms. Starford began renting her Florida house. Net rental income of approximately $150.00 per month was used for family expenses until 1978 when the house was sold for a net profit of $27,200.00. Mr. Vance used those proceeds to pay a portion of the debt in his Merrill Lynch account in Tampa. The sum represented twenty-four percent of the total securities in the account.

Mr. Vance brought assets into the marriage totalling $292,968.00. Of that amount, $159,974.00 consisted of the amount outstanding on a contract for the sale of a Culligan business Mr. Vance had owned from 1957 until 1975. The remaining $132,994.00 consisted primarily of stocks, bonds and vehicles.

Once settled in Bozeman, Ms. Starford and Mr. Vance made the major purchase of their marriage, a house and out buildings on forty acres of land. The house and land were purchased in 1976 for approximately $85,000.00. Mr. Vance borrowed $30,000.00 from his mother for the down payment. The monthly payments were paid out of the principal portion of the Culligan contract payments. There is a balance due on the house of $42,000.00.

At the time of dissolution, $83,700.00 remained outstanding on the Culligan contract. The District Court held that balance to be a separate asset of Russel Vance, free and clear of any claims by Sue Starford.

Further, at the time of dissolution, the parties entered into the following stipulation regarding the value of many of their marital assets:

| ASSETS | FAIR MARKET VALUE | INDEBTEDNESS | NET VALUE |
|---|---|---|---|
| Itemized and Appraised Personal Property- Mandeville Appraisal | $ 17,977.00 | -0- | 17,977.00 |

3

| | | | |
|---|---|---|---|
| Itemized and Appraised Personal Property- Cindy Nelson Appraisal | 2,460.00 | -0- | 2,460.00 |
| Additional Personal Property Items | 18,867.00 | -0- | 18,867.00 |
| Stocks Owned by the Parties | 173,469.00 | -0- | 173,469.00 |
| | $212,773.00 | -0- | $212,773.00 |

The valuation of the remaining assets was disputed by the parties. Specifically, those assets are: the Bozeman home and accompanying forty acres; 1400 shares of Sunbird Aviation stock; a 1979 GMC "Jimmy"; Ms. Starford's retirement fund; and the crop of hay harvested from the Bozeman land after the parties separated.

Each of the parties hired a professional appraiser to determine the value of the Bozeman house and forty acres. Ms. Starford's appraiser placed the value at $160,000.00 while Mr. Vance's appraiser valued the property at $140,000.00. Ms. Starford testified that she believed the property to be worth $160,000.00. Mr. Vance thought it was worth $110,000.00. The District Court, stating no reasons, adopted the $160,000.00 value.

Mr. Vance testified at length regarding the financial history of Sunbird Aviation. Because of the company's financial difficulties, he valued the stock at $5000.00. No opposing testimony was presented. The District Court adopted the $5000.00 value.

The GMC "Jimmy" was valued at $7300.00 with an indebtedness of $7300.00, for a net value of $0.00. Therefore, the "Jimmy" added no value to the marital estate. Since Mr. Vance was awarded the "Jimmy", if its net value is greater than $0.00, he received a windfall and has no grounds for complaint.

Ms. Starford's retirement fund and the cut hay have values of $2,025.00 and $500.00, respectively. Although not

4

mentioned in the original findings, they were included in the marital estate in the court's amended findings and conclusions of July 15, 1981.

In the original order of June 24, 1981, the following distribution of marital assets was made:

| | FAIR MARKET VALUE | INDEBTEDNESS | NET VALUE |
|---|---|---|---|
| TO WIFE: | | | |
| Cash received for stock at separation | | | $22,449.00 |
| Personal property to be retained by petitioner | | | 6,155.00 |
| Wife's personal effects | -0- | -0- | -0- |
| Stocks or cash to be transferred to wife | | | 80,000.00 |
| TOTAL | | | $108,604.00 |
| TO HUSBAND: | | | |
| Balance of personal property-Mandeville, Exhibit #16, Cindy Nelson & Stipulated Exhibit #11 | $33,149.00 | -0- | 33,149.00 |
| Sunbird Aviation Stock | 5,000.00 | | 5,000.00 |
| 1979 Jimmy vehicle | 7,800.00 | 7,800.00 | -0- |
| Husband's personal effects | -0- | -0- | -0- |
| Family home & 40 acres | $160,000.00 | $42,000.00 | $118,000.00 |
| Balance of stocks | 98,465.00 | -0- | 98,465.00 |
| TOTAL | $304,414.00 | $49,800.00 | $254,614.00 |

On July 1, 1981, Mr. Vance filed a motion requesting the District Court to correct or amend several aspects of its order. Specifically, he requested that:

1. The net value of the family home and forty acres be adjusted to reflect the $30,000.00 owed by Mr. Vance to his mother for the down payment she loaned him.

5

2. The fair market value of the family home be amended to $150,000.00, the average of the two professional appraisals.

3. Ms. Starford's retirement benefits be included in the marital estate.

4. The cash received by Ms. Starford for stock be amended to the correct amount as reflected in the exhibits presented at trial, $24,424.00, not $22,449.00. That amount represents twenty-four per cent of the total securities in the Merrill Lynch account.

5. The distribution of the stocks owned by the parties be changed to accurately reflect the total stock owned by the parties, $173,469.61, not $200,914.00.

In response, an amended order was filed July 17, 1981, distributing the marital estate between the parties as follows:

| | FAIR MARKET VALUE | INDEBTEDNESS | NET VALUE |
|---|---|---|---|
| TO WIFE: | | | |
| Cash received for stock at separation | $24,424.00 | -0- | $24,424.00 |
| Personal Property to be retained by petitioner (Exhibit #14) | 6,155.00 | -0- | 6,155.00 |
| Wife's personal effects | -0- | -0- | -0- |
| Retirement Fund | 2,025.00 | -0- | 2,025.00 |
| Stocks or cash to be transferred to wife | 76,000.00 | -0- | 76,000.00 |
| TOTAL | | | $108,604.00 |
| TO HUSBAND: | | | |
| Balance of personal property-Mandeville, Exhibit #16, Cindy Nelson, & stipulated Exhibit #11 | $33,149.00 | -0- | 33,149.00 |
| Sunbird Aviation Stock | 5,000.00 | -0- | 5,000.00 |
| 1979 Jimmy vehicle | 7,300.00 | 7,300.00 | -0- |
| Husband's personal effects | -0- | -0- | -0- |

6

| | | | |
|---|---|---|---|
| Family home & 40 acres | $160,000.00 | 72,000.00 | 88,000.00 |
| Hay | 500.00 | -0- | 500.00 |
| Balance of stocks | 73,045.00 | -0- | 73,045.00 |
| TOTAL | $278,994.00 | $79,300.00 | $199,694.00 |

In his appeal of the amended order, Mr. Vance alleges five specific abuses of discretion by the District Court.

1. The court incorrectly valued the family home and forty acres.

2. The court incorrectly treated the property acquired prior to marriage.

3. The court failed to properly apply the criteria mandated by section 40-4-202(1), MCA.

4. The court considered irrelevant factors or factors not supported by the record in dividing the marital estate.

5. The court improperly divided the marital estate in its amended order. The total decrease in the amended value of the marital estate was deducted from the portion of the marital estate originally awarded Mr. Vance.

Finally, Mr. Vance asserts that the division of the marital estate violated his constitutional right of equal protection under Montana law.

We find no abuse of discretion by the District Court and no violation of Mr. Vance's right of equal protection. The amended findings, conclusions and order of July 15 and 17, 1981, are affirmed.

The District Court did not abuse its discretion when it adopted the appraised figure of $160,000.00 as the value of the family home and forty acres. We held in Wolfe v. Wolfe (1983), ____ Mont. ____, ____, 659 P.2d 259, 262, 40 St.Rep. 211, 214, that: "Where there are 'widely conflicting valuations' between different appraisers, the District Court shall give reasons why one value is selected over the others." In Wolfe, the "widely conflicting valuations" were

7

$1,649,166.00, $1,184,725.50 and $450,000.00. The District Court chose the $450,000.00 figure.

Our decision in Wolfe was predicated upon another recent decision, Peterson v. Peterson (1981), ____ Mont. ____, ____, 636 P.2d 821, 823, 38 St.Rep. 1723, 1726, where we stated:

> "At trial the parties presented conflicting evidence regarding the value of the home ranch. Appellant offered the testimony and appraisal report of a professional certified appraiser who concluded the value of the home ranch to be $740,000 as of September 1980. The respondent offered the testimony of a local rancher and real estate buyer. He valued the ranch at $402,500. The District Court, without stated reasons, accepted the lower figure. The District Court is free to follow one appraisal and reject another. However, here there is a wide disparity in valuation, and we are unable to review for abuse of discretion in the absence of findings by the trial court supporting the valuation selected."

In comparison, the appraisals in the instant case are not "widely conflicting valuations." Under these circumstances, it is not necessary for the District Court to set forth specific reasons.

Further, appellant's eight assertions of error in the adopted appraisal have no merit. The valuation was presented by a professional appraiser. She thoroughly discussed her reasons for arriving at the $160,000.00 figure. The appraisal was supported by substantial credible evidence. The appraised value of the property adopted by the District Court is affirmed.

Appellant's second, third and fourth allegations of abuse of discretion by the District Court concern the court's application of section 40-4-202(1), MCA to the instant facts.

Section 40-4-202(1), MCA, states in part:

> "In disposing of property acquired prior to the marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:
>
> (a) the nonmonetary contribution of a homemaker;

8

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property disposition serves as an alternative to maintenance arrangements."

In distributing property acquired prior to the marriage, the court is not limited solely to consideration of the above listed factors. Those considerations are set forth to specifically benefit the homemaker who does not work outside the home. The court is also free to consider the other factors set forth in section 40-4-202(1), MCA. It did so. In awarding Ms. Starford $76,000.00 in stocks or cash as her equitable portion of Mr. Vance's stocks, the court considered all of Ms. Starford's contributions to the family unit. She completed her fair share, if not more, of the household chores. She also worked fulltime outside the home, thus enabling Mr. Vance to devote his time to the management of his financial affairs.

Mr. Vance would like to have his marriage to Sue Starford treated as a business relationship. It was not. Equitable distribution of the assets of a marriage depends upon more than just each party's initial financial contribution to the relationship. Many other relevant factors are found in section 40-4-202(1), MCA. It is evident from the court's orders and accompanying memorandums of June 24, 1981 and July 15, 1981, that it considered those statutory factors in distributing the marital estate.

Consideration was given to the parties' occupations, amounts and sources of income, vocational skills, employability, estates, needs and opportunities for future acquisition of capital assets and income. The District Court specifically refused to consider any allegations regarding Mr. Vance's marital misconduct. We find no abuse of discretion and affirm the distribution of the marital estate between the parties.

9

Next, Mr. Vance contends the court abused its discretion when it deducted the total amended decrease in the value of the marital estate from the portion originally awarded him. Again, we do not agree. The court stated in its memorandum accompanying the amended order that the court originally "made error in computation" and that the court "was in error in the amount of stocks still in the hands of the respondent [Mr. Vance]." Clearly, the court was merely correcting errors which had unintentionally benefited Mr. Vance.

Finally, the District Court judge stated: "It is still a man's world as far as income is concerned and I have recognized this fact in the distribution of assets." That statement is a description of the present relative economic status of men and women. It is a realistic observation. Applying the observation to the distribution of the marital estate between these parties did not violate Mr. Vance's constitutional right of equal protection. His contention is meritless.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea will file a written dissent later.

10