No. 87-548

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN RE THE MARRIAGE OF
CAROL C. DALLEY,

        Petitioner and Appellant,

   and

MARK F. DALLEY,

        Respondent and Respondent.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Davidson & Poppler; Doris M. Poppler, Billings,
Montana

    For Respondent:

        Sandall, Cavan, Smith & Grubbs; John J. Cavan,
Billings, Montana

---

Submitted on Briefs: March 31, 1988

Decided: June 7, 1988

Filed: JUN 7 1988

*Ethel M. Harrison*
_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal from the Thirteenth Judicial District involves the division of a marital estate in a dissolution proceeding. Appellant Carol C. Dalley (Carol) contends that the District Court erred in arriving at her share of the estate, and respondent and cross-appellant, Mark F. Dalley (Mark) makes the same claim in regard to his share on cross-appeal. We affirm the division made by the District Court.

The issues presented for review on appeal are as follows:

(1)     Whether the Court abused its discretion in apportioning the parties' marital assets?

(2)     Whether the Court erred in failing to award Carol assets traceable as gifts from her relatives.

(3)     Whether the Court erred in failing to date the value of the parties' assets in 1976?

The issue presented on cross-appeal is:

Whether the Court abused its discretion in arriving at Mark's share of the marital assets?

The relevant facts are briefly as follows: The parties married on June 28, 1946, and the lower court dissolved the marriage by interlocutory order on April 10, 1987. The property division went to trial on April 23, 27, 28, and 30, 1987. After the trial on November 10, 1987, the District Court's decree divided the parties' assets. Under the decree Carol received property valued at $766,988.60, and Mark received property valued at $379,001.40.

The lower court made extensive findings on the contributions of the parties toward acquiring and maintaining the assets in the marital estate. In summary, the lower court found that: in the early years of the marriage both parties worked and contributed their income to the expenses of the marriage; that later Carol cared for the parties' children and Mark worked to support the family; that gifts of money, stock, and financial assistance to Carol from her father, aunt, and uncle before the marriage, and other gifts from her father during the marriage, were used during the marriage to supplement the parties' income; that the parties' bought and sold a Billings tavern during the marriage; that Carol started her own business during the marriage; that the parties own their own home; that Carol holds investment assets which produce income from interest and dividends; that Carol acquired other investment assets with investment earnings; that Mark was gifted stock from Carol's father during the marriage and used the stock and his share of sale proceeds from the tavern to borrow money for a business venture which has lost money; that since 1975 the parties contributed separately to a joint account used to cover household expenses; that in 1976 the parties began to file individual income tax returns; that from 1975 to 1986, Carol contributed $112,076.93 to family living expenses while Mark contributed $53,550; and that in the near future Carol would receive an inheritance from her deceased father's estate.

The lower court listed the parties' assets as follows:

### ASSETS

| | | | |
|---|---|---|---|
| 1. | 6,672 shares | Amoco | $497,064 |
| 2. | 667 shares | Cypress Minerals | 14,174 |
| 3. | 1,185 shares | Lehman Brothers | 19,849 |
| 4. | 160 shares | Mont. Power Co. Preferred | 4,280 |

3

|     |                                         |           |
| --- | --------------------------------------- | --------- |
| 5.  | Tax exempt bonds-face value $155,000     | 183,966   |
| 6.  | Money Market Account                     | 13,808    |
| 7.  | IRA (wife)                               | 15,455    |
| 8.  | CD                                       | 60,000    |
| 9.  | 1978 Oldsmobile                          | 3,000     |
| 10. | Manpower, Inc.                           | 15,000    |
| 11. | CD                                       | 100,000   |
| 12. | IRA (husband)                            | 7,500     |
| 13. | Mont. Power Co. (Husband-savings)        | 4,328     |
| 14. | Cash value life insurance                | 5,066     |
| 15. | Contract-sale of poker & keno machines   | 42,000    |
| 16. | 1981 Chrysler                            | 3,000     |
| 17. | Country Club membership                  | 5,000     |
| 18. | Money Market CD                          | 87,000    |
| 19. | Family home and contents per Ex. C       | 70,000    |

TOTAL ASSETS . . . . $1,150,490

The lower court did not list Carol's expected inheritance as an asset in the marital estate.

From the total asset figure the lower court subtracted Mark's liabilities of $180,252, to arrive at a net value of the parties' assets of $970,238. The District Court then made the division as follows:

> Asset items 1 and 2 shall be wife's because these are stocks gifted to her by her family and the proceeds of stock splits and spinoffs from those gifts.
> Asset items 3 through 10 shall be wife's but the values of asset items 3 through 10 shall be divided 70% to wife and 30% to husband because she has been substantially more instrumental in the acquisition, preservation, management and accumulation of these assets and because gifts from her family were also important to her ability to put together these assets; 30% to husband fairly reflects his contribution to preservation of these assets.
> Asset items 11 through 18 are set over to husband because these items have been managed by him and it is necessary that he have these items to achieve an equitable apportionment.
> Asset item 19 is set over to wife but the value thereof shall be equally split for this is an

4

equitable apportionment of the family home and its contents.

The liabilities, items 20 and 21 are set over to husband because he is responsible for their creation and continued existence and he has the assets which are pledged as security for their payment.

## Issue I.

Carol contends that the lower court abused its discretion in dividing the parties' assets. First, she argues that the division is unfair because the majority of her share is traceable to gifts from her relatives. Carol also contends under this issue that the lower court failed to consider her father's contribution to the construction of the family home, and failed to consider her right to half the proceeds from the sale of the tavern in Billings.

In reviewing a district court's division of marital property this Court will reverse a district court:

only upon a showing that the district court has acted arbitrarily or has committed a clear abuse of discretion, resulting in either instance in substantial injustice.

In re the Marriage of Hall (Mont. 1987), 740 P.2d 684, 686, 44 St.Rep. 1321, 1323.

We reject Carol's contentions on this issue because § 40-4-202, MCA, gives the lower court the discretion to consider factors in addition to the source of the property. In re the Marriage of Vance (1983), 204 Mont. 267, 275, 664 P.2d 907, 912. Here, the lower court found that:

Wife's investments have been substantially more successful than husband's and the generosity of her family has played a substantial part in the accumulation of the assets the parties own. But husband worked and earned a good income during the entire marriage. That income and wife's income

5

have been used by the parties to rear the children, support the family, and to some extent, have aided wife in accumulating, saving, maintaining and increasing those assets managed by her.

In addition to this finding, the lower court also found that Carol would be more likely to acquire greater capital assets than Mark, that Carol would shortly receive a substantial inheritance, and that Mark had contributed to the acquisition and maintenance of the family home and the tavern. These findings are supported by substantial evidence, they weigh in favor of distributing a portion of assets contested by Carol on appeal to Mark, and they demonstrate that the contributions of Carol's relatives were considered. Thus, there is no clear abuse of discretion here, and we affirm on this issue.

## Issue II.

Carol maintains that inasmuch as spouses may conduct financial transactions independently, (see §§ 40-2-301 to-302, MCA; § 40-2-202, MCA; § 40-2-106, MCA), and inasmuch as Mark's contribution to acquiring and maintaining her investment assets was minimal, we should conclude that the District Court abused its discretion by not awarding more of the investment assets to Carol. Carol fails to specify which assets should have been awarded to her under this theory, but we must assume from the facts of this case that the assets she complains of are the items numbered 3-10 in the lower court's asset list. Carol received 70% of these assets, and Mark received 30%.

First, in regard to the statutes cited, the "application of these statutes to married couples is undeniable, but there is no intimation that they are at all controlling upon dissolution of the marriage by divorce." Cook v. Cook

6

(1972), 159 Mont. 98, 102, 495 P.2d 591, 593. We hold here that they do not control over the more particular provisions of § 40-4-202, MCA. Thus, we are not persuaded to reverse by their citation.

Second, Carol contends that we should follow the rationale employed by the Oklahoma Supreme Court in Mothershed v. Mothershed (Okla. 1985), 701 P.2d 405, a dissolution property dispute where the Court stated:

> The gift of property to a spouse during marriage is considered separate property of such spouse and upon divorce it cannot be considered as having been acquired by the joint industry, or efforts of the parties to the subject marriage. . . . "If one spouse brings separate property to the marriage, increased or enhanced value of the property will not constitute jointly acquired property during coveture unless the enhancement value was the result of joint efforts, skill or funds of both spouses."

Mothershead, 701 P.2d at 408 (quoting Templeton v. Templeton (Okla. 1982), 656 P.2d 250, 252). We have held similarly that where none of the value of gifted property is a product of contribution from the marital effort, the District Court can justifiably find that the non-acquiring spouse has no interest in the property. In re the Marriage of Herron (1980), 186 Mont. 396, 404, 608 P.2d 97, 101. However, we also stated in Herron that in determining:

> the exact distribution of this type of marital asset, no set formula can be established as to how the assets should be equitably distributed. Each case has to be decided on its own merits.

Herron, 608 P.2d at 100.

As stated in regard to the first issue, the lower court awarded some of Carol's investment assets to Mark because of;

Carol's superior ability to acquire capital assets and her recent inheritance, Mark's current indebtedness, and Mark's contributions of income during the marriage which to some extent aided Carol's investment ventures. The consideration of these facts as affecting the distribution of gifted property is proper under § 40-4-202, MCA, and the facts themselves distinguish this case from Herron. Thus, there is no clear abuse of discretion on this issue and we affirm.

Issue III.

Carol contends that the District Court abused its discretion by failing to value the marital assets in 1976. She maintains that in 1976 the parties terminated their marital relationship and began to change their financial status due to individual initiative. Thus, according to Carol, In re the Marriage of Wagner (Mont. 1984), 679 P.2d 753, 41 St.Rep. 409, mandates valuation of the assets in 1976. Mark responds that the marriage relationship was not terminated in 1976, and that Wagner may be distinguished from the case at hand.

First, in Wagner, this Court held that the parties' unique financial circumstances mandated a valuation of marital assets two years before the date of formal legal dissolution because: (1) the assets were acquired after the marital relationship was irretrievably broken, (2) the disparity of the parties' business acumen resulted in a change of the parties' financial status after the separation so that selection of the later date would create an unjust distribution. Wagner, 679 P.2d at 758. In this dispute, unlike in Wagner, the evidence preponderates against a finding that the marriage was irretrievably broken in 1976. The parties here lived together and shared expenses until June of 1986 when Carol filed her petition for dissolution.

Thus, there is no separation of the parties and their assets as in Wagner, and the rule from Wagner does not apply. Furthermore, the award of some of the appreciation of Carol's investment holdings is supported by the findings we have referred to in the first two issues. Thus, we affirm on all issues presented on Carol's appeal.

On cross-appeal Mark contends that the District Court failed to properly value his contribution to the parties' asset accumulation. Specifically, Mark contends that as the chief breadwinner of the family, his contributions of income entitle him to a larger portion of the marital assets. We reject this contention. The record shows that Carol contributed her labor as homemaker during much of the period that Mark claims credit for as the "chief breadwinner", and the record also reveals that gifts to Carol and Mark of stock from Carol's relatives furthered the establishment and accumulation of marital assets. Section 40-4-202, MCA, mandates consideration of Carol's contribution and the contribution of her relatives. Thus, the District Court did not abuse its discretion by undervaluing Mark's contribution.

Mark also argues that the District Court should have included the value of Carol's expected inheritance in the marital estate. A district court may commit error by failing to consider an expected inheritance in distributing the marital estate. In re the Marriage of Alt (Mont. 1985), 708 P.2d 258, 260, 42 St.Rep. 1621, 1626. However, property gifted during the marriage may be excluded from the marital estate where an objecting spouse can claim no contribution to the property's value. Becker v. Becker (Mont. 1985), 707 P.2d 526, 528, 42 St.Rep. 1541, 1544. It follows from Becker that an expectation of property where an objecting spouse can claim no contribution may be properly excluded from the

marital estate. That is the case here, and the District Court properly excluded Carol's expected inheritance. All issues are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices