No. 92-128

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

BONNIE L. MISCHKE,

     Plaintiff and Appellant,

-v-

CALVIN L. MISCHKE,

     Defendant and Respondent.

FILED

FEB 2 - 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          James C. Bartlett, Hash, O'Brien & Bartlett,
Kalispell, Montana

     For Respondent:

          R. M. Kehew, Kalispell, Montana


Submitted on Briefs: October 29, 1992

Decided: February 2, 1993

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal by the Petitioner, Bonnie L. Mischke, from an order distributing marital assets by the District Court of the Twentieth Judicial District, Lake County, Montana. We affirm.

We have restated the issues for our review as follows:

1. Whether the District Court erred by including Mrs. Mischke's "inheritance" in the marital estate.

2. Whether the District Court erred in determining that gifts from Albert Hoffman were made to both Mr. and Mrs. Mischke.

3. Whether the District Court correctly determined the net assets of the marital estate.

4. Whether the District Court abused its discretion by awarding 52% of the marital estate to Mr. Mischke and 48% to Mrs. Mischke.

Bonnie and Calvin Mischke (the Mischkes) were married on March 27, 1971 in Wolf Point, Montana. At the time, Mr. Mischke worked for the Wolf Point Farmers' Union Elevator and Mrs. Mischke worked for her father, Albert Hoffman, doing general farm labor. Shortly after the marriage, Mr. Mischke lost his job at the elevator and began working on Mr. Hoffman's farm. The relationship between Mr. Mischke and Mr. Hoffman was strained throughout the Mischkes' marriage. Nonetheless, the record establishes that Mr. Hoffman made substantial gifts to the Mischkes throughout the marriage until his death in June of 1990.

Shortly after they were married, Mr. Hoffman bought a house in Wolf Point for the Mischkes to live in. They lived there rent-free

2

for eight years. After their three children were born, Mr. Hoffman built a larger home for the Mischkes. This new home was built in 1979 on property where an older home was also located. The Mischkes received the rents from this home to apply as payments to Mr. Hoffman on the new home.

Albert later deeded the entire property to the Mischkes. They were to repay Mr. Hoffman for the materials for this new home but not his labor. Mr. Hoffman later forgave a large part of this debt. In September 1986, the Mischkes moved to the Flathead area and rented a home on the East Shore of Flathead Lake. The Mischkes continued to receive rents from both Wolf Point homes.

In 1987, Mr. Hoffman helped the Mischkes purchase the home they had been renting for the previous year. The purchase price was $46,500. Mr. Hoffman and his wife owned an undivided one-half interest and the Mischkes owned the other one-half interest. The Mischkes agreed to pay Mr. and Mrs. Hoffman one-half the purchase price plus $10,000 for debts Albert had paid for them--a total of $33,250. They subsequently defaulted on the loan to the Hoffmans. Periodically, the Hoffmans forgave some of the payments and allowed double credit for others. Approximately one month before Mr. Hoffman's death in 1990, the Hoffmans conveyed their one-half interest in the home to the Mischkes.

In February of 1990, the Mischkes sold the Wolf Point rental homes for $60,000. Some of this money was used for home improvements to their Flathead home. Mrs. Mischke customarily handled all the financial affairs for the parties. She testified

3

that the $59,555 cash received from the sale was all spent by September 1990 for home improvements, living expenses and debts. She further testified that she transferred some of this to a Capital Preservation Fund and later to her separate savings account at Whitefish Credit Union.

Following Mr. Hoffman's death in June of 1990, Mrs. Mischke received a death benefit which testimony established was to be her inheritance from Mr. Hoffman. This money was deposited in the joint checking account. Mrs. Mischke testified that she used some of her inheritance to pay marital debts. Mrs. Mischke testified extensively about her reasons for switching funds among various bank accounts in an attempt to explain how her inheritance could be traced from the date it was received until after the date of separation and to show that the inherited funds were kept separate. She also presented much evidence in an attempt to prove that Mr. Hoffman's gifts were intended for her alone and not as joint gifts.

Testimony established that the Mischkes enjoyed a standard of living far beyond what they could have afforded without Mr. Hoffman's generosity. In addition to the gifts and loans described above relating to the homes, Mr. Hoffman made numerous other gifts of cash and other items to the Mischkes. Mr. Hoffman's farm corporation paid for health and life insurance, telephone service and $150 in food each month for the Mischkes.

The sole issues for trial were calculation and distribution of marital property and child support. The District Court determined that the value of the marital estate, including the home and cash

4

in Mrs. Mischke's account, was $175,402. Mr. Mischke received assets valued at $91,683 and Mrs. Mischke received assets valued at $83,719. Mrs. Mischke sold other marital assets after the parties separated through Gardner Auction Service in Missoula. The award to Mr. Mischke includes a lump sum child support award as he has the minor children living with him. Mrs. Mischke was unemployed at the time of trial except for part-time piano instruction.

I.

Whether the District Court erred by including Mrs. Mischke's "inheritance" in the marital estate.

Mrs. Mischke contends that her inheritance should be separate property. Mrs. Mischke testified that she transferred cash from one account to another in order to keep the inheritance separate from money received from the sale of the Wolf Point homes.

The record establishes, however, that prior to the parties' separation in January of 1991, inherited funds were commingled with other marital income, and although Mrs. Mischke controlled marital finances, she made little effort to separate her inheritance. Consequently, we are unable to determine that the total amount of the inheritance was still intact at the time of trial. Nonetheless, the record establishes that the District Court considered the nature of the asset and awarded a substantial sum of cash to Mrs. Mischke.

Our standard of review for questions of law is whether they correctly apply the law. In re the Marriage of Hamilton (Mont. 1992), 835 P.2d 702, 704, 49 St.Rep. 604, 606. An inheritance

5

received during the marriage may be a marital asset. Section 40-4-202(1), MCA. We conclude that under the facts of this case the marital estate could properly include Mrs. Mischke's "inheritance."

We hold that the District Court did not err by including the amount of Mrs. Mischke's inheritance in the marital estate.

## II.

Whether the District Court erred in determining that gifts from Albert Hoffman were made to both Mr. and Mrs. Mischke.

Mrs. Mischke disputes the District Court's finding that the gifts were not made to her individually, particularly the Flathead area home. She contends that ownership of the family home resulted from gifts made to her alone from her father and that Mr. Mischke should not be awarded 100% of property gifted to her. She presented testimony to establish that both the Flathead home and her inheritance could be traced as gifts from Mr. Hoffman intended for her alone, even though the Hoffmans transferred title to the home to both Mr. and Mrs. Mischke as joint tenants with the right of survivorship.

However, cash sums received from the sale of the Wolf Point homes and later from Mrs. Mischke's inheritance were not kept separate. They were deposited in joint accounts. Mrs. Mischke testified that although cash was commingled in joint marital accounts, the $59,555 from the sale of the Wolf Point homes was exhausted prior to the parties' separation to pay marital debts, living expenses and home improvements and that all the inheritance was kept intact. The record does not support her contention that

6

her inheritance can be accounted for separately.

Our standard of review for a district court's factual findings relating to the division of marital property is whether they are clearly erroneous. Hamilton, 835 P.2d at 704. A finding is not clearly erroneous if it is supported by substantial evidence. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 322-23, 820 P.2d 1285, 1287. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a scintilla of evidence and may be somewhat less than a preponderance. Barrett v. Asarco, Inc. (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080.

Letters from Albert discussing his gifts were written to both Mr. and Mrs. Mischke. All real property was conveyed to them both as joint tenants with rights of survivorship. The record establishes that ownership of the Flathead home resulted partly from Mr. Hoffman's gifts and partly from the Mischke's payments.

Despite Mrs. Mischke's testimony that Mr. Mischke did little to maintain or enhance the value of this property, the District Court found that the gifts from Mr. Hoffman were intended as gifts to both Mr. and Mrs. Mischke. Property gifted during marriage may be excluded from the marital estate, however, where the objecting spouse can claim no contribution to the property's value. In re the Marriage of Dalley (1988), 232 Mont. 235, 242, 756 P.2d 1131, 1135. Such is not the case here. While Mr. Mischke's contributions may not have been great, the record establishes that he helped to construct the Wolf Point home, helped to construct

7

improvements to the Flathead home, contributed to the maintenance of both homes and that his earnings also contributed to payments to Mr. Hoffman from the parties' combined income during the marriage. We conclude there is substantial evidence in the record to support the District Court's finding that Mrs. Mischke failed to prove an individual gift.

We hold that the District Court did not err in determining that gifts from Mr. Hoffman were made to both Mr. and Mrs. Mischke.

## III.

Whether the District Court correctly determined the net assets of the marital estate.

Mrs. Mischke's argument focuses upon the net amount of the marital estate. She claims that the total "cash in bank," found by the District Court to be $47,999.00, is incorrect. If her inheritance must be included in the marital estate, she contends that the correct amount is $34,995.43. This figure represents the amount of her inheritance ($46,988.41 gross; $43,319.54 actually received net of taxes) less the amount of pre-separation debts and attorney's fees she claims to have paid.

To support this contention, Mrs. Mischke introduced into evidence a copy of a savings account record from Whitefish Credit Union, showing a balance of $45,667.02 as of April 23, 1991. Mrs. Mischke did not provide any bank statements or other information to demonstrate the amount of cash in the account as of the date of trial, which was December 2, 1991.

Although the District Court did not specifically state a

8

factual finding relating to how it determined the total "cash in bank," the amount determined ($47,999.00) is only $2,332.00 more than the amount shown as of April 23, 1991. A trial judge is free to accept any valuation of property he wishes so long as there is substantial evidence to support the value selected. In re the Marriage of Hammill (1987), 225 Mont. 263, 732 P.2d 403. The District Court could have reasonably determined that this amount represented earned interest from the date of deposit until the date of the decree or that it represented an amount Mrs. Mischke received from sales of marital property that she sold through Gardner Auction Service in Missoula.

Mrs. Mischke also contends that Mr. Mischke should be ordered to pay her for 50% of the total pre-separation debts that she paid from her inheritance, represented by the $13,003.57 figure. She testified that she borrowed $13,000 after the parties separated, some of which she used to pay $8,444.31 in pre-separation marital debts instead of using her inheritance money to pay them. She subtracted $13,000.00 (the amount of the loan) to arrive at her calculation for "cash in bank."

Mrs. Mischke failed to produce adequate financial records to support her contention that the money was used in this manner. The District Court noted that "the evidence introduced by the parties with respect to marital debt is confusing, conflicting and incomplete."

The decree provides that any indebtedness incurred after the date of separation is not part of the marital estate. This

9

includes the $13,000.00 borrowed by Mrs. Mischke. It also provides that both parties remain jointly responsible for unpaid marital debts. Mrs. Mischke testified but produced inadequate proof to substantiate that two marital debts totalling slightly over $2,000.00 remained unpaid at the time of trial.

A district court is not required to determine and assign marital debts based on one party's testimony where copies of statements from creditors or other evidence to support claims has not been introduced. In re the Marriage of Purdy (1988), 234 Mont. 502, 764 P.2d 857. The record establishes that Mrs. Mischke handled all financial matters for the parties and that she did not provide copies of accounts as requested during discovery. Similar to Purdy, the evidence Mrs. Mischke introduced at trial to establish marital debt was sketchy; she testified as to the amounts, but did not provide copies of statements or other credible evidence to support her claims. Her evidence consisted of her handwritten summaries and oral testimony. We affirm the District Court's refusal to allocate part of the $13,000.00 debt to the husband.

We hold that the District Court did not err in determining the net assets of the marital estate.

### IV.

Whether the District Court abused its discretion by awarding 52% of the marital estate to Mr. Mischke and 48% to Mrs. Mischke.

The District Court awarded 52% of the marital estate to Mr. Mischke, including the home, stating that:

10

. . . The Court has taken all factors into consideration and awards a larger share of the marital estate, including the Woods Bay family home, to the Respondent as a one time cash settlement in lieu of support, and Petitioner shall have no further child support obligation for the minor children of the parties.

In dividing marital property, courts must fashion a distribution which is equitable to each party under the circumstances. Hamilton, 835 P.2d at 704. Obtaining an equitable distribution at times requires the court to engage in discretionary action which cannot be accurately categorized as a finding of fact or a conclusion of law. Such discretionary findings will not be disturbed absent an abuse of discretion. In re the Marriage of Danelson (Mont. 1992), 833 P.2d 215, 49 St.Rep. 597. Abuse of discretion in apportioning the marital estate is manifested by a substantially inequitable division of the marital estate. In re the Marriage of Holston (1983), 205 Mont. 470, 668 P.2d 1048.

Under Montana law, gifts and inheritances are treated similarly in a dissolution of marriage proceeding. Section 40-4-202(1), MCA, provides

> . . . the court. . . shall . . .finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether title thereto is in the name of the husband or wife or both . . . In dividing property acquired . . . by gift, bequest, devise or descent; property acquired in exchange for property acquired . . . by gift, bequest, devise, or descent . . . the court shall consider those contributions of the other spouse to the marriage, including:
>   (a) the nonmonetary contribution of a homemaker;
>   (b) the extent to which such contributions have facilitated the maintenance of this property; and
>   (c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202(1), MCA, is a flexible statute vesting

11

district courts with wide discretion for distributing marital property. In re the Marriage of Stewart, 232 Mont. 40, 757 P.2d 765. There is no set rule concerning how an inherited asset is to be divided. Stewart, 757 P.2d at 768.

In addition to the broad discretion given to District Courts concerning property division, they also have broad discretion in providing for support for children. In dividing marital property, the court may take into account child support considerations and may protect and promote the best interests of the children by setting aside a portion of jointly and separately held property for support of their children. In re Marriage of King (1985), 216 Mont. 92, 700 P.2d 591.

Mrs. Mischke testified that she was unemployed except for part-time piano instruction and could not afford to pay any child support for the two minor children. She further testified that she intended to provide for their support from the proceeds of the sale of the family home. Instead of ordering a sale of the home, the District Court awarded a larger share of the marital estate to Mr. Mischke, which was to be considered a lump sum settlement in lieu of child support from Mrs. Mischke and which relieved her of all future support obligations for the children.

Considering the facts of this case, we conclude that the District Court did not abuse its discretion by awarding 52% of the marital estate to Mr. Mischke and 48% to Mrs. Mischke. We further conclude that the District Court did not abuse its discretion in awarding a larger share of the marital estate to Mr. Mischke in

12

lieu of monthly child support payments.

We hold that the District Court did not err in distributing 52% of the marital estate to Mr. Mischke and 48% to Mrs. Mischke.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to the West Publishing Company.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

13

February 2, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James C. Bartlett
HASH, O'BRIEN & BARTLETT
P.O. Box 1178
Kalispell, MT 59903

R.M. KEHEW
Attorney at Law
P.O. Box 5427
Kalispell, MT 59903-5427

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy