No. 91-561

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF
PHILLIP A. HAMILTON,

     Petitioner and Respondent,

and

DEBRA M. DANELSON, f/k/a
DEBRA M. HAMILTON,

     Respondent and Appellant,

and

LEONARD AND BONNIE HAMILTON,

     Intervenors and Cross-Appellants,

and

CAROL A. MITCHELL,

     Intervenor.

FILED

JUL 9 1992

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:
      Richard A. Volinkaty, Attorney at Law, Missoula,
      Montana

    For Respondent:
      Judith A. Loring, Attorney at Law, Stevensville,
      Montana

    For Intervenors and Cross-Appellants:
      Richard A. Reep, Reep, Spoon & Gordon, P.C.,
      Missoula, Montana

    For Intervenor:
      Timothy Geiszler, Geiszler & Newcomer, Missoula,
      Montana

Submitted on Briefs: April 23, 1992

Decided: July 9, 1992

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Phillip A. Hamilton (Phillip) commenced dissolution of his marriage to Debra M. Danelson-Hamilton (Debra) in the Fourth Judicial District, Missoula County, Montana. The District Court entered the Final Decree of Dissolution on November 17, 1989 which incorporated by reference a marital and property settlement agreement. Debra later moved to modify, reopen, or revoke the property settlement and division, child custody, support and visitation provisions of the decree. The District Court denied the motion and Debra appeals. We affirm.

The dispositive issues on appeal are as follows:

1. Did the District Court err when it denied Debra's motion to modify, reopen or revoke the property settlement and division.

2. Did the District Court err when it denied Debra's motion to modify child support, custody and visitation provisions of the dissolution decree.

The parties were married in Missoula, Montana, on July 30, 1983. Prior to the marriage Debra obtained a college degree and was employed as a television announcer. She was not employed outside the home during the early years of the marriage but began a day-care in her home during the later stages of the marriage. Phillip worked as a musician, part-time bookkeeper and sometimes operated a recording studio business. The parties had one child, a son, Coleman.

The parties came to live in a lifestyle that they, by their own means, could not support. Accordingly, throughout the marriage

2

both parties borrowed money and received numerous gifts from their respective families. The couple separated in approximately October of 1988 and Phillip petitioned for dissolution on December 8, 1988.

On November 6, 1989, Phillip and Debra entered into a marital and property settlement agreement with an effective date of September 18, 1989. On November 17, 1989, the District Court entered a Final Decree of Dissolution which incorporated by reference the marital and property settlement agreement of the parties. The agreement addressed division of property, debt allocation, maintenance, child custody, child support and other related issues such as a trust fund for Coleman and tax exemption issues.

On September 17, 1990, Debra filed a motion "TO RE-OPEN, MODIFY, OR REVOKE THE PROPERTY SETTLEMENT AND DIVISION, CHILD CUSTODY AND SUPPORT, AND FOR TEMPORARY MAINTENANCE AND ATTORNEY'S FEES." The District Court denied Debra's motion on May 15, 1991. Debra now appeals on the grounds that the property division was unconscionable.

It should be noted that in addition to the above events, Leonard and Bonnie Hamilton, Phillip's parents, became parties to this action when they intervened for grandparent visitation by petition on July 12, 1989. Also, after the completion of the parties' dissolution, Debra's initial attorney, Carol A. Mitchell, filed a notice of attorney's lien on May 17, 1990, to secure payment of unpaid attorney's fees.

The record discloses that this dissolution was particularly

3

fraught with animosity and spite. The parties were uncooperative and aggravating to one another throughout the entire proceeding. It is against this unfortunate backdrop that we address the dispositive issues.

I. Modification, Revocation or Reopening of the Marital and Property Settlement Agreement.

Debra asserts that it is necessary and proper to modify, revoke, or reopen the property settlement agreement (the agreement) which was incorporated by reference in the dissolution decree. She claims that since the signing of the agreement, several events have substantially altered the valuation of the marital estate. We note, however, that each of her contentions involve a change in her own or Phillip's financial status which took place after the dissolution. For example, although the parties borrowed from both sets of parents, a great deal of money was owed to Phillip's parents. This debt figure was utilized in calculating the agreement. Debra alleges that Phillip's parents waited until the agreement was signed and then forgave approximately $100,000 of debt. She also indicates that after the dissolution, Phillip's parents made other gifts to him in the form of stock interests. Debra argues that this information was concealed from her during settlement negotiations.

Next, Debra asserts that after the agreement was signed, she learned that her father was diagnosed with cancer and that he also was going through a divorce. She states that she signed the agreement relying on the fact that her father would be in a

4

position to help her financially.

Finally, she asserts that the May 17, 1990, action by her former attorney Carol Mitchell has severely hampered her financial condition. Ms. Mitchell intervened in the case at bar to protect her interest in Debra's unpaid legal fees.

Debra claims that since none of these factors were known to her at the time she signed the agreement, she should now be able to revoke, modify or reopen the agreement. We disagree.

Section 40-4-208, MCA, states the basis for modification and termination of provisions for maintenance, support, and property disposition. The relevant portion regarding property disposition is as follows:

(3) The provisions as to property disposition may not be revoked or modified by a court, except:

(a) upon written consent of the parties; or

(b) if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.

Section 40-4-208(3), MCA.

Phillip has not consented in writing to modification of the property disposition and after reviewing the record, we do not find conditions that justify reopening the judgment. In fact, the record indicates that both Debra and Phillip stipulated to the agreement which provided for property settlement and distribution. Both were represented by counsel who assisted them during a lengthy negotiation period. Further, the record indicates that the parties freely, and with full understanding, signed the agreement. The parties agreed to limit modification of the settlement and property

5

division as indicated by the following language in the agreement:

> j. Modification. No modification or waiver of the terms of this Agreement shall be valid unless in writing and signed by both parties.

This modification limitation is authorized by § 40-4-201(6), MCA. The District Court did not find the terms of the agreement unconscionable and neither do we.

On appeal, our standard of review in the division of marital property was recently clarified by this Court in In re Marriage of Danelson (Mont. 1992), No. 91-255, decided July 9, 1992. In Danelson, we stated:

> This Court has recently clarified that our standard of review in regard to the factual findings of the district court relating to the division of marital property is whether the district court's findings are clearly erroneous. In re Marriage of Sacry (Mont. 1992), 49 St. Rep. 452. Concerning this Court's review of conclusions of law made by a lower court we have stated that "[w]e are not bound by the lower court's conclusions and remain free to reach our own." Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 391, 770 P.2d 522, 523. The basis for simply determining if the lower court's conclusions are correct is that there is no discretion in determining a question of law. The lower court either correctly or incorrectly applies the law. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.
>
> In adopting these standards of review in division of marital property cases, this Court is not in any way discounting the considerable discretionary power that must be exercised by district courts in these cases. The courts are obligated to fashion a distribution which is equitable to each party under the circumstances. In re Marriage of Jones (1987), 229 Mont. 128 745 P.2d 350; § 40-4-202, MCA. The courts, working in equity, must seek a fair distribution of the marital property using reasonable judgment and relying on common sense. Obtaining this equitable distribution will at times require the lower court to engage in discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. These discretionary judgments made by the trial court are presumed to be correct and will not be disturbed by this

6

> Court absent an abuse of discretion by the lower court.
> Meridian Minerals v. Nicor Minerals, Inc. (1987), 228
> Mont. 274, 742 P.2d 456.

Danelson, slip op. at 8-9.

Debra also alleges that in order to disadvantage her, Phillip committed fraud. She claims that the information about future debt forgiveness and stock gifts was concealed from her prior to the dissolution. The result of Phillip's alleged fraud was Debra's receipt of a reduced award under the agreement.

Debra relies on In re Marriage of Madden (1984), 211 Mont. 237, 683 P.2d 493, as an example of fraud due to one party's failure to disclose financial information. In Madden, the husband and the attorney failed to disclose a balloon payment on the house awarded to the wife, and therefore the property agreement was set aside.

The case at bar is clearly distinguishable from Madden in many respects. Most importantly, both parties were represented by one attorney in Madden, and neither the husband nor the attorney informed the court about the balloon payment. In the case at bar, both parties hired independent counsel and there is no proof that relevant financial information was concealed from Debra when executing the settlement agreement.

After a review of the record, we find no evidence that Phillip concealed information from Debra or committed a fraud upon the court in any way as to his representations of assets or net worth as they relate to the marital and property settlement.

It is true that Phillip's financial status was and is

7

predictably better than Debra's since his parents possess considerable wealth and as their son he may benefit from their wealth. Even so, the gifts from Phillip's parents after dissolution do not automatically become part of the marital estate and grounds to reopen the agreement. What Debra suggests is that simply because Phillip is the recipient of a gift, she should be entitled to a portion of it. This we will not do.

Debra cites In re Marriage of Dalley (1988), 232 Mont. 235, 756 P.2d 1131, as a basis for claiming that a court can commit error by failing to consider inheritance in the marital estate. Such an interpretation of Dalley is selective and incomplete. In Dalley, we excluded the wife's expected inheritance from the marital estate.

> However, property gifted during the marriage may be excluded from the marital estate where an objecting spouse can claim no contribution to the property's value. [Citation omitted.] It follows . . . that an expectation of property where an objecting spouse can claim no contribution may be properly excluded from the marital estate.

Dalley, 232 Mont. at 242, 756 P.2d at 1135 (emphasis in original).

With regard to inheritance we previously held that property given to one spouse during marriage may be excluded from the property division calculations unless the non-acquiring spouse can demonstrate that he or she actually contributed to any related increase in the value of the property. In re Marriage of Eklund (1989), 236 Mont. 77, 80, 768 P.2d 340, 342. Under such circumstances, if a non-acquiring spouse is not entitled to a portion of the gift during the marriage, we cannot imagine the non-

8

acquiring spouse obtaining a portion of a gift made after the dissolution of the marriage as in the case at bar.

With regard to the ill health of Debra's father and the resulting financial hardship she faces because of her reliance on his promised financial assistance, we fail to see how Phillip can be held responsible in any way. Similarly, the pending action by Debra's former attorney for unpaid legal fees cannot be assigned to Phillip. In short, Debra has failed to show that the property division was unconscionable.

Debra also claims that she is entitled to relief from judgment under Rule 60(b) M.R.Civ.P. She contends that she qualifies for relief alternatively under subsection (6) of Rule 60(b) or under the final portion of the rule that gives the court authority to grant relief for fraud upon the court. We are not persuaded by her arguments. Montana's Rule 60(b) is nearly identical to the equivalent Federal rule and we previously have said that there must be a delicate balance between the sanctity of final judgments and the court's conscience that justice be done in light of the individual circumstances and facts. Koch v. Billings School Dist. No. 2 (Mont. 1992), ___ P.2d ___, ___, 49 St.Rep. 517, 518.

Under Rule 60(b)(6), M.R.Civ.P., there must be "extraordinary circumstances" to justify reopening of the judgment. In Koch, the plaintiff's injury claims were initially dismissed by the district court based on governmental immunity. The unique circumstances and bizarre timing of caselaw amounted to extraordinary circumstances. The case at bar is not analogous to Koch. While the events that

9

eroded Debra's financial condition are unfortunate, they do not amount to the extraordinary standard necessary to grant relief from judgment under Rule 60(b)(6), M.R.Civ.P.

Not only do Debra's claims fail under subsection (6) of Rule 60(b), M.R.Civ.P., but, the claims do not amount to a fraud upon the court. Finding no basis under Rule 60(b) M.R.Civ.P., to grant Debra relief from judgment, we decline to do so.

II. Motion to Modify Child Support, Custody and Visitation.

Debra contends that the District Court erred when it denied her motion to modify child support, custody and visitation. The statutory authority for modification of child support is § 40-4-208(2)(b)(i), MCA, which states that a modification can only be made "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable."

Debra again contends that the debt forgiveness, stock gifts, her father's cancer and divorce, her former attorney's action against her for unpaid attorney's fees, as well as the other events impinging upon her financial condition, amount to "changed circumstances" under the statute. We disagree. The District Court did not find any of the circumstances asserted by Debra to be substantial and continuing so as to make the terms unconscionable and warrant modification of child support. We hold there was substantial evidence supporting the District Court.

Finally, Debra fails to make any arguments in her brief regarding the modification of prior custody which is controlled by

10

§ 40-4-219, MCA, nor does she address the issue of visitation modification under § 40-4-217, MCA. She merely references these topics in her statement of the issues and briefly mentions them in a constitutional argument which we find moot in light of our holding here. Accordingly, we will not address them either.

After a review of the record, we find that the District Court's division of the marital estate was not clearly erroneous. Therefore, the rulings by made by the District Court will remain undisturbed. Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

11