No. 95-127

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

CINDIE L. LOBERG,

      Co-Petitioner and Respondent,

  and

CRAIG L. LOBERG,

      Co-Petitioner and Appellant.

FILED

SEP 08 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Jill Deann Miller; Nye & Meyer, Billings,
Montana

     For Respondent:

          Jon A. Oldenburg, Attorney at Law, Lewistown,
Montana

Submitted on Briefs:  August 10, 1995

Decided:  September 8, 1995

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Craig L. Loberg (Craig) appeals from the March 10, 1995 order of the Tenth Judicial District Court, Fergus County, denying his motion to reopen the August 6, 1993, Judgment and Decree of Dissolution between him and Cindie L. [Loberg] Drewry (Cindie). We affirm.

The following issues are raised on appeal:

1.  Did the District Court lack jurisdiction to enter the Decree of Dissolution?
2.  Did the District Court err in ordering temporary child support?
3.  Did the District Court err in making the child support retroactive?

Craig and Cindie were married on July 30, 1977. Two sons, now ages 16 and 17, were born of the marriage. On August 6, 1993, Craig and Cindie met at the Fergus County Attorney's office, where Cindie was employed as a secretary, to discuss child custody, child support, and property division. With the assistance of the County Attorney, Cindie drafted the divorce papers while Craig waited in the office. That day, the couple jointly presented the papers to the District Court judge for his signature. The judge asked Craig and Cindie if they wanted a divorce and they responded in the affirmative, stating that it was their desire and intent to obtain a divorce. The district judge signed the decree.

The agreement granted joint custody of the two teenage boys to Craig and Cindie. Craig received the family home, and the majority of the couple's vehicles. These assets comprised the bulk of the marital estate.

A hearing was held on September 19, 1994, to decide Craig's

2

motion for an Order to Execute Instruments, namely, a quit claim deed for the family home, and to decide Cindie's motions to amend the Findings of Fact, Conclusions of Law, and Decree of Dissolution. Cindie sought to receive her share of the proceeds from the sale of a shotgun, obtain the use of a video camera, obtain possession of family photos, and receive child support and income tax exemptions for the children.

The court found the issue of the quit claim deed moot, as Cindie executed the instrument at the hearing. The court stated that although the video camera mentioned at the hearing may have been property of the family corporation where Craig was employed, Cindie was entitled to reasonable use of the camera. The court ordered that Craig pay child support pursuant to the Montana Child Support Guidelines, and that Cindie was entitled to the income tax exemptions for the year 1994. Craig did not comply with this order. He did not provide Cindie with use of the camera and he did not complete the child support financial affidavit. As a result, Cindie filed a Verified Petition for an Order to Show Cause.

Pursuant to the Verified Petition for an Order to Show Cause, a hearing was held on February 15, 1995. In the written order of March 10, 1995, the court found that Craig's sale of the video camera was not an arms-length transaction, and was done to deprive Cindie of the use of the camera. Cindie was awarded $170.32 in lost wages and mileage for the trip she made to Circle, Montana to pick up the camera. The court ordered temporary child support in the amount of $150 per month, per child, retroactive from November

3

15, 1994. Permanent child support calculations were to be determined when the court was satisfied with the Child Support Enforcement Division Financial Affidavits to be submitted by the parties. Craig filed a Motion for Relief in the District Court, claiming that the portion of the order pertaining to child support differed from the court's oral ruling of February 15, 1995. On May 22, 1995, a telephone conference call was held and the District Court issued a Memorandum Order providing that the District Court would not enter any further orders in this matter until this Court has entered a final decision regarding the appellate issues.

1. Did the District Court lack jurisdiction to enter the Decree of Dissolution?

Craig's voluntary execution of the dissolution agreement and appearance at the August 6, 1993, conference subjected him to the court's jurisdiction. Rule 4B(2), M.R.Civ.P., provides that jurisdiction may be acquired by the voluntary appearance in an action by any person. See also Fonk v. Ulsher (1993), 260 Mont. 379, 383, 860 P.2d 145, 147. Here, Craig signed the Petition for Dissolution of Marriage and voluntarily appeared in front of the judge. The general rule that a voluntary appearance is sufficient to confer jurisdiction, coupled with the fact that this practice is customary in joint petitions for dissolution, subjects Craig to the jurisdiction of the court.

On appeal, Craig further raises the question of the twenty-day waiting period which is referenced in §§ 40-4-105(3) and 40-4-130, MCA. The issue of jurisdiction is separate and distinct from the issue of the twenty-day waiting period. The twenty-day waiting

4

period provided in § 40-4-105(3), MCA, is inapplicable in the instant case. The twenty-day period applies in the situation where one party files the dissolution action and the statute provides that a decree may not be entered until twenty days after the date of service. Here, the parties filed a joint petition; there was no party to be served. A twenty-day waiting period is also referenced in § 40-4-130, MCA, however, this provision is also inapplicable as these parties do not fit within the requirements of the summary dissolution procedures.

Craig and Cindie were co-petitioners in the original proceeding, and Craig has enjoyed the benefits of the property distribution for two years. He was awarded the family home, had the opportunity to sell it, and was awarded the majority of vehicles owned by the couple. At this late date, it would be unreasonable, if not impossible, to restore the parties to their original positions. Neither Craig nor Cindie allege extrinsic fraud, thus, to reopen this judgment two years later would be inequitable and would undermine the finality that is fundamental to the dissolution procedures. See In re Marriage of Hamilton (1992), 254 Mont. 31, 835 P.2d 702; Miller v. Miller (1980), 189 Mont. 356, 616 P.2d 313.

2.    Did the District Court err in ordering temporary child support?

Temporary orders are interlocutory actions by the court and generally are not appealable. Rule 1, M.R.App.P. Craig mischaracterizes the May 26, 1995, Memorandum Order when he concludes that the order converts the temporary child support order

5

into a final order. Rather, the order stays the action in the District Court pending this appeal.

We agree with the District Court that the issue of child support should have been decided when the original decree was entered. In this case, however, the District Court must still consider the financial affidavits of each party and apply the Uniform Child Support Guidelines to reach a final determination on the issue of child support. From its March 10, 1995, order, it appears that the District Court has "serious questions regarding the accuracy of Respondent's financial affidavit." The District Court must consider these questions when it reaches a final determination on the issue of child support in applying the Uniform Child Support Guidelines. This determination is within the discretion of the District Court and, unless a judgment is final, this Court is without jurisdiction to hear the appeal and make a determination. In re Marriage of Adams (1979), 183 Mont. 26, 28, 598 P.2d 197, 198. Because of our holding on issue two, we need not consider issue three.

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_W. William Buyhurt_
Justice

6

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7