No. 88-618

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN RE THE MARRIAGE OF
MARCIA J. HOFFMASTER,

        Petitioner and Appellant,

   and

RICHARD K. HOFFMASTER,

        Respondent and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jon E. Ellingson; Ellingson & Moe, Missoula, Montana

    For Respondent:

        Thomas J. Beers; Connell, Beers & MacDonald, Missoula,
Montana

Submitted on Briefs: July 13, 1989

Decided: September 7, 1989

Filed:

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Marcia J. Hoffmaster, petitioner and appellant, appeals from the custody arrangement, child support and maintenance award mandated in the judgment entered by the District Court of the Fourth Judicial District, Missoula County. We affirm in part and reverse and remand for a modification of child support consistent with this opinion.

The following issues are raised on appeal:

1. Whether the District Court exercised proper discretion when it established custodial arrangements.

2. Whether the District Court exercised proper discretion when it established the amount of child support.

3. Whether the District Court exercised proper discretion when it established the amount of maintenance.

Marcia and Richard Hoffmaster were married on May 29, 1977. Previously, Richard received a gift of $250,000 worth of Amstar stock from his father. Prior to the marriage, Marcia had a bachelor of arts in elementary education and special education and was a full-time special education teacher. In addition, she needed only 15 credit hours to receive her masters of arts in special education. Richard had a degree in English.

Before the the marriage, Richard purchased land at North Fork, Idaho, where he built a cabin. Marcia and Richard

primarily resided at the Idaho cabin from the year of their marriage until 1980. During that time, Richard's parents made gifts of money to him which were used to pay marital expenses and make payments on property. The parties lived frugally during those years. From 1980 to 1983 they resided in Arizona, Washington and Idaho. In 1983, the parties moved to Missoula, Montana, and continued to live a frugal lifestyle. They lived in a tri-plex rental.

In 1983, Richard began a course of diversification which involved the sale of his Amstar stock in order to make other financial investments. Among his investments was a $50,000 down payment on the purchase of a golf course in Missoula. Marcia worked part-time on the golf course until August 15, 1985.

In April of 1984, Richard's father died, leaving him a sizeable inheritance. Richard received the first installment of his inheritance, $1,000,000, in the fall of 1985. Richard used his inheritance to purchase assets and pay sums due on the golf course property.

In May of 1985, the parties moved into a $115,000 residence on Fairview Avenue. Soon after moving into the home, Marcia went to Chicago to visit her parents. Upon her return in August of 1985, Richard advised her that he would be moving out.

On December 4, 1985, Marcia filed for dissolution of the marriage. On January 4, 1986, the parties' son, Alex, was born.

During the parties' separation, Marcia continued to live at the Fairview residence. Alex remained with Marcia. In November of 1987, Marcia and Alex moved to Elgin, Illinois, and have resided there since.

Dissolution proceedings were held before the District Court in July of 1988. During dissolution proceedings,

Richard received $750,000 as another inheritance installment. He is likely to receive another installment pending resolution of a dispute with the Internal Revenue Service. The court entered its findings of fact, conclusions of law and judgment on August 17, 1988. Included in the court's judgment, were resolutions to the issues of child custody, child support and maintenance.

Custody of Alex was awarded jointly to the parties with primary residential custody granted to Marcia. Richard was granted residential custody for two months during the summer, one month in the spring and one month in the fall. The parties received alternating residential custody during Christmas and Easter. The joint custody arrangement will remain in effect until Alex starts the first grade of primary school. At that time, Marcia will have primary residential custody of Alex and Richard will have residential custody for two months during the summer.

The court, in its judgment, established that Richard is responsible for child support as follows:

a) $1,200 child support per month until the child reaches the age of 18 or is otherwise emancipated.

b) All medical, ocular, dental and orthodontic bills that are incurred by the child.

c) All medical, ocular, dental and orthodontic insurance.

d) All secondary and post-secondary education costs of the child to whatever schools he is qualified to attend and which the child, and both parents, wish him to attend.

The court also established that Richard shall pay Marcia $1,000 per month maintenance until Alex reaches the first grade of primary school. Marcia received $34,000 cash as a

property settlement in lieu of maintenance reduced by $3,000 which had been previously advanced.

The first issue raised on appeal is whether the District Court exercised proper discretion when it established the custodial arrangement.

As noted, the District Court implemented a joint custody arrangement. Marcia was given primary residential custody while Richard was given residential custody for two months during the summer, one month in the spring and one month in fall. The arrangement is to remain in effect until Alex starts the first grade of primary school.

Marcia argues that under In re the Custody of Andre (Mont. 1988), 761 P.2d 809, 45 St.Rep. 1745, she has established de facto custody of Alex. Andre, however, is distinguishable from the present case.

In Andre, this Court awarded mother custody. The parties in Andre never married but lived together and shared parental responsibilities for the first four years of the child's life. When the parties separated, the child remained in the custody of mother. While the parties never established a judicial custody arrangement, they did agree orally that mother would have custody. The parties also agreed orally to a child support arrangement.

In the present case, while Marcia maintained custody of Alex upon the parties' separation, Richard never conceded custody of Alex to Marcia. This was amplified by the fact that Richard sought temporary joint custody of Alex during settlement negotiations. A custody arrangement had never been agreed upon and remained at issue pending resolution of the action. Under these facts, de facto custody has not been established.

Marcia attempts to argue that establishing a joint custody arrangement violates § 40-4-219, MCA, which provides

that the District Court, in its discretion, may modify a _prior_ custody decree if it finds that circumstances of the custody arrangement have changed. Because neither a decree nor informal arrangement was in effect prior to this action, the statute does not apply.

Montana policy favors joint custody. See In re the Marriage of Cruikshank (1986), 222 Mont. 152, 154, 720 P.2d 1191, 1193. Section 40-4-223(1)(a), MCA, provides in part:

> (1) In custody disputes involving both parents of a minor child, the court shall award custody according to the best interests of the child as set out in 40-4-212:
>
> (a) to both parents jointly.

Section 40-4-212, MCA, provides:

> The court shall determine the custody in accordance with the best interest of the child. The court shall consider all relevant factors, including but not limited to:
>
> (1) the wishes of the child's parent or parents as to his custody;
>
> (2) the wishes of the child as to his custodian;
>
> (3) the interaction and interrelation of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
>
> (4) the child's adjustment to his home, school, and community;
>
> (5) the mental and physical health of all individuals involved;
>
> (6) physical abuse or threat of physical abuse by one parent against the other parent or the child; and

(7) chemical dependency, as defined in 53-24-103, or chemical abuse on part of either parent.

Further, the standard of review for child custody issues was established by this Court in In re the Marriage of Bier (Mont. 1981), 623 P.2d 550, 551, 38 St.Rep. 158, 159, as follows:

> In order to prevail, [Marcia] must show an abuse of discretion by the judge, must demonstrate that there is a clear preponderance of evidence against the findings, and must overcome the presumption that the judgment of the trial court is correct. [Citation omitted.] [In reviewing the District Court's custody order], this Court need only look to the record to see if the factors set forth in section 40-4-212, MCA, were considered, and then must determine whether the trial court made appropriate findings with respect to these criteria. [Citation omitted. Parenthetical inserts supplied.]

The District Court, in its findings of fact and conclusions of law, specifically noted that both Marcia and Richard are capable of caring for Alex and communicate with each other about his care; that it is in the best interests of Alex for both Marcia and Richard to be involved in Alex's development; and that it is in the best interests of Alex to give Marcia and Richard joint custody with residential custody to be divided between them.

We hold that in light of the District Court's findings, there was no abuse of discretion nor a showing by Marcia of a clear preponderance of evidence against the findings. The District Court properly considered the best interests of Alex as required under § 40-4-212, MCA.

The next issue raised on appeal is whether the District Court exercised proper discretion when it established the amount of child support.

The District Court established that Richard is responsible for $1,200 child support plus medical and educational needs. Marcia contends that the court erred in setting the amount of child support. She requested $3,357 per month.

An award of child support is governed by § 40-4-204, MCA, which provides in pertinent part:

> (1) In a proceeding for dissolution of marriage, . . . or child support, the court may order either or both parents owing a duty of support to a child to pay an amount <u>reasonable</u> or necessary for his support, without regard to marital misconduct, after considering all relevant factors including:
>
> (a) the financial resources of the child;
>
> (b) the financial resources of the custodial parent;
>
> (c) <u>the standard of living the child would have enjoyed had the marriage not been dissolved</u>;
>
> (d) the physical and emotional condition of the child and his educational needs;
>
> (e) the financial resources and needs of the noncustodial parent. [Emphasis ours.]

The District Court stated in its findings:

> The child, presently age 2½, has only experienced a standard of living with his mother and that standard is not consistent with the standard of living developed during the course of the marriage.

- 8 -

The District Court maintained that while it considered the Uniform District Court Guidelines on Child Support (Mont. 1987), 44 St.Rep. 828, it did not adhere to the Guidelines because of the lifestyles of the parties, the standard of living of the child, and that the Guidelines:

> . . . would allow this child to be favored with monies and personal wealth that would not be in the best interest of the child in his development toward adulthood.

The District Court awarded child support payments in the amount of $1,200 a month instead of the $3,357 a month as Marcia requested. While the District Court is not bound by the Guidelines, Marcia contends that the Guidelines suggested an award of $4,500 per month, thus, the amount awarded grossly deviated from the Guidelines and was in error. Richard never contested the calculation of the Guideline amount.

The amount arrived at by the District Court ignores two statutory factors under § 40-4-204, MCA--the standard of living Alex would have enjoyed had the marriage not been dissolved and the financial resources of Richard. The standard of living that Alex would have enjoyed had the marriage not been dissolved is not to be confused with the standard of living that the parties enjoyed during the marriage, nor is it the standard of living that Alex enjoyed during the marriage.

Richard has collected $1,750,000 in inheritance installments and will likely receive another installment pending a resolution of a dispute with the Internal Revenue Service. Richard also owns income-producing property. Hence, the sum awarded by the District Court does not reflect Richard's financial resources nor the standard of living Alex would have enjoyed had the marriage remained intact because of his father's wealth.

Marcia requested $3,357 a month based on expenditures. The District Court rejected both Marcia's $3,357 per month request and the Guidelines' suggested amount of $4,500 per month, as Marcia contends, and, instead, implemented a $1,200 per month (plus medical and educational needs) support payment. The amount awarded is unreasonable and would result in substantial injustice to Alex who is entitled to share in the high standard of living achieved by his father. See, In re the Marriage of Anderson (Mont. 1988), 748 P.2d 469, 471, 45 St.Rep. 40, 43. The District Court will be reversed on appeal only where there has been a "clear abuse of discretion resulting in substantial injustice." See, In re the Marriage of Alt (1985), 218 Mont. 327, 333, 708 P.2d 258, 261. We hold that the District Court abused its discretion in establishing the amount of child support. We reverse on this issue and remand to the District Court with instructions to grant $3,357 per month for child support in light of the expenditures reflected in the record.

The last issue raised on appeal is whether the District Court exercised proper discretion when it established the amount of maintenance.

Here, the District Court awarded Marcia $1,000 per month maintenance until Alex reaches the first grade. In addition, she received $34,000 in cash to be treated as part of the property settlement in lieu of maintenance reduced by a $3,000 advancement.

The award of maintenance is governed by § 40-4-203, MCA, which provides:

> (1) In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) lacks sufficient property to provide for his reasonable needs; and

(b) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) the standard of living established during the marriage;

(d) the duration of the marriage;

(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

In the findings of fact and conclusions of law, the District Court noted that Marcia received a bachelor of arts in elementary education and special education and was 15

credit hours short of receiving her masters of arts in special education. Marcia was a full-time special education teacher prior to her marriage. The District Court noted that it provided for maintenance until Alex reaches the first grade of primary school in order to allow Marcia to continue her education for recertification and/or her masters degree while attending to Alex.

In the property distribution, Marcia received the cash equivalent of the marital estate property in the amount of $76,000 and a $34,000 cash property settlement in lieu of maintenance ($10,000 of which to be considered as Marcia's contribution to the golf course) reduced by a $3,000 advancement. The court further noted that the standard of living established during the marriage was nomadic and frugal and that the time Marcia spent at the Fairview residence did not create a standard of living or new lifestyle.

The standard of review for awarding maintenance was set forth by this Court in Anderson, 748 P.2d at 471, as follows:

> The District Court has wide discretion in the determination of maintenance awards, and that discretion is not to be disturbed unless clearly erroneous.

Citing In re the Marriage of Aanenson (1979), 183 Mont. 229, 235, 598 P.2d 1120, 1123.

The District Court found that Marcia had a sufficient occupational and educational background. Granting her maintenance until Alex reaches school age gives her the time for recertification and further training, hence, she will be capable of self-support when Alex reaches school age. The court also considered the fact that Marcia will receive a portion of the marital estate. Thus, the District Court properly considered the factors set forth in § 40-4-203, MCA, and did not abuse its discretion when it awarded maintenance.

Affirmed in part and reversed and remanded for a modification of child support consistent with this opinion.

_William E. Hunt_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_R. C. McDonough_

_L. C. Gulbrandson_
Justices