In re Debra M. DANELSON, a/k/a Debra M. Hamilton, Debtor.

Carol A. MITCHELL, Plaintiff,

v.

Debra DANELSON, Defendant.

Bankruptcy No. 91–31037–007.
Adv. No. 91/00112.

United States Bankruptcy Court,
D. Montana.

July 23, 1992.

---

. . . . .

Timothy D. Geiszler, Geiszler & Newcomer, Missoula, Mont., for plaintiff.

Eula Compton, Bozeman, Mont., for debtor/defendant.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

This adversary proceeding is a removed action from Montana State District Court wherein the Plaintiff Carol Mitchell, an attorney, filed a pre-petition complaint against the Debtor/Defendant to collect on a promissory note in the sum of $10,387.71. The Debtor's answer admits the execution of the note, but resists payment on grounds the note was given under duress and constituted fraud. The Debtor further filed a compulsory counterclaim against the Plaintiff alleging professional negligence by the Plaintiff when representing the Debtor in the divorce action which forms the basis of the Plaintiff's complaint for unpaid attorney's fees. Finally, the Plaintiff filed a secured Proof of Claim, asserting secured status by reason the Montana attorney's lien statute, Mont.Code Ann. Section 37–61–420. Objection to the Proof of Claim was filed by the Debtor. Trial on all matters was held on March 5, and 6, 1992. Briefs have been filed by the parties and the matter is ready for decision. This case is a core proceeding involving claims against and on behalf of the estate. 28 U.S.C. § 157(b)(2)(B); *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990).

## A. MALPRACTICE COUNTERCLAIM.

As Debtor's divorce counsel, Mitchell undertook the representation of the Debtor's interests. At issue were child custody and support, spousal maintenance, and equitable division of the parties' property. The matters were resolved by a custody and property settlement agreement arrived at on the day the divorce cause was set for trial. One of the Debtor's professional negligence claims is that Mitchell was not adequately prepared for and ready to proceed to trial on behalf of the Debtor. I find from the evidence on this issue that Mitchell had properly prepared for trial by having expert custody and accounting witnesses, together with Debtor, ready and available for trial. The Debtor makes much of the fact that eight prepared, but unserved subpoenas, were found in Mitchell's file, and concludes therefrom that Mitchell's trial preparation failed to meet a standard of care required of attorneys. But, the evidence shows that the necessary expert and lay testimony to support the Debtor's proposed pre-trial Findings of Fact and Conclusions of Law (which Debtor's counsel characterized as excellent) were interviewed and prepared by Mitchell, and available for trial. Specifically, the expert child psychologist was ready to testify despite service of a subpoena, and Debtor's retained accountant had examined the necessary financial records concerning the Mall partnership to enable him to give expert testimony on value and income. Pre-trial preparation, contrary to the Debtor's assertion, was clearly sufficient to enable Mitchell to prepare the necessary factual data included in the "excellent" pre-trial findings and conclusions. I have considered the testimony of expert Nye on this issue and reject it as unsupported by the evidence.

The real issue on professional negligence is whether Mitchell adequately represented her client's interest in the settlement negotiations, which resulted in an agreement between the parties. At the outset, it is now conceded by the Debtor, that the agreement was entirely satisfactory as to the custody arrangement. Mitchell contends that the Debtor's overriding and subsuming interest in the divorce action was to obtain physical custody of the minor child. While clearly that issue was important to the Debtor, it does not relieve Mitchell of her legal duty toward Debtor's other interests, particularly as to child support and equitable distribution of the marital estate.

The factual contentions of the parties involve two areas, namely child support and equitable division of the marital estate. As to the latter issue, the divergence of contentions can best be shown by the views of the experts as to the effect of the settlement agreement negotiated by Mitchell and counsel for the husband and his parents, as

intervenors. According to the Debtor, the ex-husband received marital property valued at $753,526, while the Debtor received net marital property valued at $25,089. In contrast, Mitchell's expert believes the ex-husband received a negative net worth of $49,259 (after making cash payments of $40,000 for property and maintenance payments), while the Debtor received a net marital estate of $42,043. The major factor in the wide disparity advanced by the parties involves gifts of interest in the Southgate Shopping Mall conceded to be worth $765,627.[1] Debtor contends that under existing Montana family law, a portion of the gift property must be included in the marital estate for the benefit of the Debtor or be computed for child support. Mitchell contends all of the gifts are separate property of the husband, Philip Hamilton. This position is clear from a letter written December 22, 1989, to the Debtor by Mitchell (Debtor's Exhibit 9) in which Mitchell states as to the mall gifts that "Phil had nothing of value with which to pay you, except the gifts from his parents to which the law gave you no claim."

It is noteworthy, however, that Mitchell evidently recognized the importance of the mall interest. In the Debtor's pre-trial proposed findings (Debtor's Exhibit 12), Mitchell set forth in Exhibit B, a net worth summary, the mall property value of $765,-627, derived from gifts by Philip's parents from 1982–1988, and urged a 50% division to each party. Debtor's expert Nye in the malpractice claim, gave the opinion that, at a minimum, the Debtor should have received at least 10% of that value in cash payment of $76,562, an amount sufficient to allow the Debtor to pay the outstanding mortgages on the family residence and Mazda automobile retained by the Debtor under the agreement. The marital property agreement awarded the mall interest solely to the husband, together with the six mile house and other assets, in exchange

for a payment of $20,000 cash, over four years.[2]

*Merzlak v. Purcell*, 830 P.2d 1278 (Mont. 1992) sets forth the criteria for legal malpractice.

Attorney malpractice is professional negligence. In order to recover in a professional negligence action, "the plaintiff must prove that the professional owed him a duty, and that the professional failed to live up to that duty, thus causing damages to the plaintiff." *Lorash v. Epstein*, 236 Mont. 21, 24, 767 P.2d 1335, 1337, (1989), quoting *Carlson v. Morton*, 229 Mont. 234, 238, 745 P.2d 1133, 1136 (1987).

The proper measure of damage in an attorney malpractice action is the difference between the amount that would have been recovered by the client except for the attorney's negligence. " ... [A] claim of malpractice must be supported not only by a showing of malpractice by ... [the attorney], but by a showing that 'but for' their negligence, [the client] ... would have recovered additional amounts ... " *Weaver v. Law Firm of Graybill*, 246 Mont. 175, 149, 803 P.2d 1089, 1092 (1990).

Purcell contends that the Merzlaks did not prove Purcell's conduct caused them damage. As later discussed, the District Court agreed with that contention. Failure to prove damages is fatal to an attorney malpractice action. *Kinniburgh v. Garrity*, 244 Mont. 350, 355, 798 P.2d 102, 105 (1990). *Id.* 830 P.2d at 1279.

Further, *FDIC v. O'Melveny & Meyers*, 969 F.2d 744 (9th Cir.1992) applying California law which is similar to Montana's legal malpractice standard, holds:

Furthermore, if an attorney "specializes within the profession, he must meet the standards of knowledge and skill of

---

1. Another gift by debt forgiveness on a rental unit known as six mile house, valued at $75,000, occurred after the settlement. Mitchell properly treated the house as encumbered during the settlement negotiations.

2. There is another provision in the agreement whereby both parties agree to disclaim or other-

wise give one-quarter (¼) of any inheritance from their parents to trust fund (sic) which they establish for Coleman (minor child of the parties). Mitchell contends this tempers the marital division. Such provision clearly has no impact on the manner in which the settlement agreement treated Phillip's property acquired by gifts.

such specialists." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 188, 98 Cal.Rptr. 837, 844, 491 P.2d 421, 428 (1971). An attorney's failure to perform in accordance with his duty is negligence, because "[e]ven as to doubtful matters, an attorney is expected to perform sufficient research...." *Smith v. Lewis*, 13 Cal.3d 349, 360, 118 Cal. Rptr. 621, 628, 530 P.2d 589, 596 (1975), overruled on other grounds *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal. Rptr. 633, 544 P.2d 561 (1976); *Day v. Rosenthal*, 170 Cal.App.3d [1125] at 1146–47 [217 Cal.Rptr. 89 (1985)]. At 748.

It is conceded Mitchell specializes in family law and must be bound by the legal duty applicable to that specialty.

As noted above, the major, if not the sole, issue in this case is the matter of how Mitchell legally treated gifts held by Phillip Hamilton in the Southgate Shopping Mall. That substantial property interest comes into play under Montana law in two ways. First, could the Debtor's counsel have sustained her position taken in the pre-trial proposed findings before the trial court that the Debtor was entitled to any portion of that asset as part of the marital estate? Or, was Mitchell correct when she wrote the Debtor in Exhibit 9, supra, that the law gave Debtor no claim to an equitable division of that property? On this first matter, Mitchell's legal duty involves her professional opinion that the Debtor could not successfully be awarded a portion of that gift in the division of the marital estate.

The second manner in which the gifted property comes into play, is its impact on the award of child support. In other words, as a lawyer representing the custodial parent who is entitled to an award of child support, should Mitchell have factored into the child support agreement the value of the Mall property owned by Phillip?

■ As to the issue dealing with the equitable division of the marital estate, Mitchell, in performance of her legal duty to the Debtor, correctly decided that, under Montana law, the gifted property was not part of the marital estate to which the debtor could lay any claim. Three Montana Supreme Court decisions support that

position. *Eklund v. Eklund*, 236 Mont. 77, 768 P.2d 340 (1989); *In re Marriage of Herron*, 186 Mont. 396, 608 P.2d 97 (1980); and *In re Marriage of Dalley*, 232 Mont. 235, 756 P.2d 1131 (1988). Those cases hold that a gift to a spouse from that spouse's family is excluded from the marital estate, as stated by the district court (Def.Ex. A), and affirmed by the Montana Supreme Court in *In re Marriage of Hamilton*, 835 P.2d 702 (Mont.1992), citing *Eklund*.

"... with regard to inheritance we previously held that property given to one spouse during marriage may be excluded from the property division calculations unless the non-acquiring spouse can demonstrate that he or she actually contributed to any related increase in the value of the property." Id. at 8.

I find and conclude on this issue, that Mitchell did not breach her professional duty to the Debtor which caused Debtor any damage. Indeed, through her negotiations, Mitchell was able to secure a $20,000 payment to the Debtor from the grandparents, even though it would be highly unlikely a trial court would have made such an award, because Mitchell properly concluded, supported by the holding of the Montana Supreme Court, that Debtor made no contribution to the acquisition of the gifts.

■ The second aspect of how the gifted property is treated with respect to child support leans favorably to the Debtor. The child support statutory law (Mont.Code Ann. § 40–4–204 (1991)), and case authorities interpreting that law are consistent and clear that among the relevant factors the trial court, and therefore counsel in the performance of her professional duty, must consider, include the financial resources of the non-custodial parent and the standard of living the child would have enjoyed had the marriage not been dissolved. Mont. Code Ann. § 40–4–204(2)(c) and (e). A Montana Supreme Court decision on a similar issue, i.e., the financial wealth of the non-custodial parent, was rendered one week before the settlement agreement was reached. *In re Marriage of Hoffmaster*, 239 Mont. 84, 780 P.2d 177 (1989), a case

which Mitchell conceded she was not aware at the time of the settlement agreement, plainly holds that a child of a well-to-do father, regardless of whether the property is part of the marital estate, is entitled to share his father's standard of living following divorce.

*Hoffmaster* holds:

"The amount arrived at by the District Court ignores two statutory factors under § 40–4–204, Mont.Code Ann. (1991)— the standard of living Alex would have enjoyed had the marriage not been dissolved and the financial resources of Richard." *Id.* 780 P.2d at 181.

*Hoffmaster* makes clear that the non-custodial spouse's wealth, which was an established fact in the Hamilton divorce action, should have been considered by Mitchell in the performance of her professional duty to the Debtor. Mitchell's testimony and the pre-trial proposed findings show a breach of that duty.

Mitchell, in performance of her legal duty to the Debtor, ignored or failed to implement the established statutory principles in settling Debtor's interest on the child support issue. According to Mitchell's pre-trial divorce exhibit, the Debtor's monthly expenses were $2,349.75. The settlement agreement gave her $450 per month child support, plus medical insurance and pre-school tuition ($150). The Uniform Child Support guidelines should have been applied. Mont.Code Ann. § 40–4–204(3)(a) and (b) (1991); *Hoffmaster,* supra at 181. Yet, Mitchell employed the Supreme Court child support guidelines in the pre-trial findings (Debtor's Ex. 10, Ex. D). Mitchell's child support calculation was as follows:

| | | |
|---|---|---|
| 1. Phillip's income (annualized) (using Jan.–July, 1989 income of $3,948 per month) | | $47,376.00 |
| less: health insurance cost of $95/mo. | | −1,140.00 |
| TOTAL ANNUAL INCOME | | $46,236.00 |
| 2. Applicable Guideline Percentage | | × 13.6% |
| 3. Child Support Obligation | | 6,228.00/yr. |
| | | $ 524.00/mo. |

---

Mitchell advised the Debtor to accept, as part of the settlement, child support provision of $450 per month, because it was more than could be acquired at trial. That advice breached Mitchell's legal duty because the value of Phillip's wealth from the unencumbered gifts of $765,627 must be factored into the child support formula, to "reflect [Phillip's] financial resources" and "the standard of living [Coleman] would have enjoyed had the marriage remained intact because of this father's wealth." *Hoffmaster,* 780 P.2d at 181. Indeed, Mitchell correctly contended in the pre-trial proposed findings that Coleman "shared in a standard of living which averaged over $3,500 per month net income." Yet, she simply ignored that standard in agreeing to a child support award far below that which could be obtained under Montana law.

As to damages on the breach of duty arising from the negligence to insist and settle based on Phillip's wealth, the Debtor has established that up to the date Debtor sought modification of the child support provision, a period of 41 months elapsed, whereby Debtor suffered loss of at least $725 per month, totaling $29,725. This figure is based on an award of one-half (½) of the agreed monthly expenses of $2,349.75 attributed to child support, or $1,175 per month. The insurance cost of $150 per month would be payable under either formula. Debtor received $450 per month on the basis of erroneous professional advice, caused in part by Mitchell's failure to research and learn of the *Hoffmaster* test. Therefore, on the child support issue, I find the Debtor sustained damage of $29,725.

Mitchell asserts a defense of collateral estoppel based on the findings of the State District Court (Def.Ex. A), affirmed by the Montana Supreme Court on July 9, 1992, of which opinion I take judicial notice. *In re Marriage of Hamilton*, 835 P.2d 702 (Mont.1992).

In *Flikkema v. Kimm (In re Kimm)*, 10 Mont.B.R. 190, 192 (Bankr.Mont.1991), this Court adopted the four-part test for collateral estoppel announced in *In re Ross*, 602 F.2d 604, 608 (3rd Cir.1979):

> 1) the issue sought to be precluded must be the same as that involved in the prior action;
> 2) that issue must have been actually litigated;
> 3) it must have been determined by a valid and final judgment;
> 4) the determination must have been essential to the prior judgment.

After the decree was entered by the state district court based on the settlement agreement, the Debtor substituted new counsel, who sought to modify that divorce action to change the equitable division of the property of the parties, and the child support obligations. The state district court denied the motion, with the entry of a written opinion. The state district court held in pertinent part:

> On September 14, 1990, the respondent [debtor] filed the present motion to reopen, modify or revoke the Marital and Property Settlement Agreement, contending that the circumstances involving her attorney resulted in an inequitable distribution of the marital estate assets, making the terms of the agreement unconscionable.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> [T]he settlement agreement was signed November 6, 1989, and the Final Decree of Dissolution was entered on November 17, 1989. The agreement was freely entered by both parties. The court did not find the terms of the agreement unconscionable at the time.[3]

After discussing Montana statutes on modification of a property settlement agreement, intrinsic fraud, modification of maintenance and support agreements, and attorney's fees, the court found:

> Respondent knew of Petitioner's potential future assets at the time she entered the settlement agreement. In addition, her claim of negligent misrepresentation is at this stage a mere suspicion of fraud and insufficient to set aside the decree of dissolution at this time. *In re Marriage of Hoyt*, 215 Mont. 449, 456, 698 P.2d 418 (1984).
>
> Alternatively, Respondent argues that if the Court finds Rule 60(b) inapplicable, then her motion should be granted based upon a showing of certain circumstances which are substantial and continuing. These circumstances include her continued reliance upon her family to meet her financial obligations, and a contention that Petitioner's parents have forgiven his debts, which alters the asset/debt distribution as viewed by the Court at the time of the settlement agreement. She cites *In re Marriage of Alt*, 218 Mont. 327, 708 P.2d 258, 260 (1985) for the proposition that the District Court is bound to consider the expected inheritance in distributing marital property.
>
> The financial aspect of this marriage was based in parental support, and does not constitute a change in circumstances, but rather the same circumstances which existed throughout the marriage. In addition, where none of the value of gifted property is a product of contribution from the marital effort, the District Court can justifiably find that the non-acquiring spouse has no interest in the property. *In re Marriage of Herron*, 186 Mont. 396, 404, 608 P.2d 97, 101 (1980); cited by *In re Marriage of Dalley*, 232 Mont. 235, 241, 756 P.2d 1131 (1988). The Respondent has not provided a sufficient basis to re-open based upon her contribution toward increasing the value of this gifted property. Her contribution would be a major consideration if the case went to trial; this case was settled.
>
> &ast; &ast; &ast; &ast; &ast; &ast;

---

**3.** A copy of the decree has not been entered in this case.

## B. SUPPORT

The Court has continuing jurisdiction to modify a judgment or order for support, but again only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable. § 40–4–208(2)(b)(i).

Factors to consider include the financial resources of the child and the custodial parent, the standard of living the child would have enjoyed had the marriage not dissolved, the physical and emotional condition of the child and his educational, and medical needs, and the financial resources and needs of the noncustodial parent. § 40–4–204. The changed circumstances may not be speculative, future, or possible conditions. *Gall v. Gall*, 187 Mont. 17, 20, 608 P.2d 496 (1980). Respondent has failed to demonstrate the needed substantial change.

On appeal, the Montana Supreme Court gave finality to the district court order by affirming the judgment.[4] The Supreme Court held in pertinent part to the child support modification request:

The statutory authority for modification of child support is § 40–4–208(2)(b)(i), Mont.Code Ann. (1991), which states that a modification can only be made "upon showing of changed circumstances so substantial and continuing as to make the terms unconscionable."

\* \* \* \* \* \*

The district court did not find any of the circumstances asserted by Debra to be substantial and continuing so as to make the terms unconscionable and warrant modification of child support. We hold there was substantial evidence supporting the district court. Slip opinion at page 10.

■ The issue tried and affirmed in the modification action involved Mont.Code Ann. § 40–4–208 (1991), not Mont.Code Ann. § 40–4–204 (1991), which was the code section I found breached by Mitchell. Under *Kimm*, the issue under § 40–4–204 was never litigated, nor is the issue sought to be precluded the same. The issue before this Court is one of professional negligence, not a proper award of child support. Clearly, that issue has never been litigated in any other forum. Accordingly, the defense of collateral estoppel does not apply, and if it did, Mitchell is equitably estopped from claiming collateral estoppel by her professionally negligent misrepresentation of the Debtor. Furthermore, as the opinion of the state district court quoted above clearly states, the issue of Mitchell's negligent misrepresentation was at that time a "mere suspicion" and had not been actually litigated. Finally, the Debtor entered into the settlement at the urging and legal advice of Mitchell. Equitable estoppel may arise when one, through culpable negligence, induces another to believe certain facts to exist, and the other rightfully relies and acts on such belief. 28 Am.Jr.2d *Estoppel and Waiver* § 61 (1966).

## OBJECTION TO MITCHELL PROOF OF CLAIM.

■ Mitchell has filed a secured Proof of Claim in the sum of $10,387.71, based on a promissory note executed November 7, 1989, by the Debtor for professional services rendered in the divorce action. Mitchell filed a state court action for collection of the note on May 1, 1990, which action is presently before this Court upon removal. Mitchell asserts a secured claim based on Mont.Code Ann. § 37–61–420 (1991), which grants an attorney lien against proceeds of litigation for unpaid attorney fees.

■ *Eisenstein v. Landoe, Brown, Planalp and Kommers, et al. (In re Eisenstein)*, 9 Mont.B.R. 499, 506 (Bankr. Mont.1991) holds an attorney has a valid, enforceable lien under Mont.Code Ann. § 37–61–420 (1991) against the proceeds of litigation or settlement recovered by the attorney for the benefit of the client. This charging lien for fees is valid on subsequent recovery in the pre-petition litigation collected by the Debtor's estate post-petition. *In re French*, 111 B.R. 391, 393

---

**4.** *See, Kimm, supra,* at 193, holding a judgment is final only after appeal or until the time for appeal has passed.

(Bankr.N.D.N.Y.1989). In the present case, the estate has collected the proceeds from the property settlement, but not the exempt maintenance or child support payments.[5] I find the attorney lien is valid and enforceable against the estate, subject however, to off-set against the award of damages heretofore made. Debtor's citation of *Matter of Pacific Far East Line, Inc.*, 654 F.2d 664 (9th Cir.1981) is not authority for denial of the lien because it is based on California common law, not similar to the Montana statutory provision. Therefore, I find the Debtor's objection to the Proof of Claim is without merit. Nevertheless, the claim is subject to off-set against the damage award due the estate on the malpractice claim.

IT IS ORDERED judgment shall be entered in favor of Richard Samson, Trustee of the estate of Debra M. Danelson, Debtor, and against Carol A. Mitchell in the sum of $29,725.

IT IS FURTHER ORDERED the objection to the Proof of Claim of Carol A. Mitchell is denied and the claim is allowed, subject to set off, as a secured claim in the sum of $10,387.71.

Let Judgment be entered accordingly.

---

5. While *Eisenstein* held the lien valid against exempt disability benefits which the attorney was employed to secure, it is doubtful the lien would attach against exempt spousal maintenance or child support payments. *See, McAlear v. Unemployment Compensation Commission,* 145 Mont. 458, 405 P.2d 219, 222 (1965). Public policy grounds would dictate against impressing the lien against such funds particularly where the Montana divorce statutes allow an award of attorney fees in appropriate circumstances separate and apart from spousal and child support awards. Mont.Code Ann. § 40–4–205 (1991).