92 F.3d 1510
 65 USLW 2125, 96 Cal. Daily Op. Serv. 6146,
96 Daily Journal D.A.R. 10,095
 Ronald L. DURKIN, Trustee of the Benchmark Irrevocable
Trust, Plaintiff-Appellee,
v.
SHEA & GOULD; Sheldon Camhy, Defendants-Appellants.
Ronald L. DURKIN, Plaintiff-Appellee,
v.
MILBERG, WEISS, BERSHAD, HYNES & LERACH, et al.,
Defendants-Appellants.
 Nos. 95-55432, 95-55434.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 11, 1996.
Decided Aug. 19, 1996.
 
 Jay D. Hanson, Gray, Cary, Ware & Freidenrich, San Diego, California, for defendants-appellants Shea & Gould.
 Donald G. Rez, Sullivan, Hill, Lewin & Markham, San Diego, California, for defendants-appellants Milberg Weiss et al.
 Francis J. Burke, Jr., Steptoe & Johnson, Phoenix, Arizona, for plaintiff-appellee Ronald L. Durkin.
 Appeals from the United States District Court for the Southern District of California, Irma E. Gonzalez, District Judge, Presiding. D.C. Nos. CV-92-01003-IEG, CV-92-01003-IEG.
 Before: O'SCANNLAIN and TROTT, Circuit Judges, and VAN SICKLE,* District Judge.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 In this second of two related cases[1] arising out of the failure of Imperial Savings Association, we must decide whether a court-approved settlement of a shareholder derivative suit precludes a subsequent action for legal malpractice.
 
 
 2
 * The law firm of Shea & Gould interlocutorily appeals the district court's order denying summary judgment in an action brought by Ronald L. Durkin alleging that the law firm breached a fiduciary duty and demonstrated negligence in its representation of Imperial Corporation of America ("ICA"), the parent corporation of failed savings and loan Imperial Savings Association ("ISA"). As representative of the ICA bankruptcy estate,[2] Durkin alleges that Shea & Gould, ICA's attorneys, committed legal malpractice in settling a class action shareholder derivative suit, Shields v. Thygerson,[3] on the same day that federal regulators ordered the seizure of ISA. The district court concluded that the Shields settlement did not preclude Durkin's action.
 
 
 3
 The Shields settlement resolved consolidated shareholder derivative and federal securities class actions involving ICA's investments in junk bonds and consumer loans. These investments arose from transactions with Michael Milken and Drexel Burnham Lambert in the late 1980s. ICA retained Shea & Gould to assist in connection with the settlement of the derivative and class actions. The shareholder plaintiffs were represented by Milberg, Weiss, Bershad, Specthrie & Lerach[4] and a host of other firms.
 
 
 4
 The parties prepared a Stipulation of Settlement, which provided that American Casualty Company would make a $12.5 million payment to an escrow fund, of which $10 million would be "deemed" to be in settlement of the class actions and $2.5 million would be "deemed" to be in settlement of the derivative actions. ICA was obligated to contribute an additional $500,000 to the escrow fund, creating a total settlement fund of $13 million for payment to the plaintiffs in the class actions. The settlement released the directors and officers of ICA from any claims that might have been brought against them by ICA or ISA.
 
 
 5
 On December 15, 1989, the ICA Board approved the Stipulation of Settlement.[5] At a hearing on February 22, 1990, U.S. Magistrate Judge Harry McCue approved the settlement under Federal Rules of Civil Procedure 23 and 23.1 and signed the final judgment.[6] Magistrate Judge McCue concluded that (1) the notice provided to shareholders was "the best notice practicable under the circumstances"; (2) the settlement was "the product of good faith arm's length negotiations"; and (3) the settlement was "fair, reasonable and adequate as to" ICA and the shareholders.
 
 
 6
 On the same day that Magistrate Judge McCue approved the settlement, the United States Office of Thrift Supervision ordered the seizure of ICA's savings and loan, ISA, and placed it into conservatorship under the Resolution Trust Corporation ("RTC"). OTS Order No. 90-375 (Feb. 22, 1990). On February 28, 1990, ICA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[7]
 
 
 7
 Durkin brings this action against ICA's directors and the attorneys responsible for the Shields settlement, alleging that (1) the directors, assisted by counsel, breached their fiduciary duties and engaged in fraudulent transfers when arranging this settlement, and (2) the attorneys committed malpractice. Durkin contends that the settlement resulted from malpractice, collusion, conflicts of interest, nondisclosure, and misrepresentation.
 
 
 8
 Durkin seeks to recover damages of at least $30 million from Shea & Gould, which ICA retained to facilitate settlement negotiations in cooperation with Baker & McKenzie, ICA's counsel of record in the derivative actions. Durkin alleges that Shea & Gould failed to advise the directors either of the need to remedy the Board's complete conflict of interest in approving the settlement, or of the gross unfairness of the consideration paid for the release of what counsel knew to be substantial derivative claims. Durkin further alleges that Magistrate Judge McCue was never told of ICA's insolvency, the imminent seizure of ISA by federal regulators, or the substantial and meritorious nature of the charges against the directors.
 
 
 9
 Shea & Gould moved for summary judgment or partial summary judgment on the grounds that the Shields judgment collaterally estops Durkin from litigating the following issues: (1) whether the Shields settlement was fair, reasonable, and adequate as to ICA, and (2) whether ICA was adequately represented by the derivative shareholder plaintiffs.
 
 
 10
 In its July 12, 1994 Order, the district court denied Shea & Gould's motion for summary judgment or partial summary judgment on the malpractice claim. The court held that collateral estoppel does not apply because Durkin did not have a full and fair opportunity to litigate the adequacy of the settlement. In addition, the court held that the prior adjudication of the settlement's adequacy does not collaterally estop a legal malpractice claim challenging the conduct of a party's attorney during the prior action.
 
 
 11
 On Shea & Gould's motion, the district court certified its July 12, 1994 decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Appellants Milberg Weiss et al. in the companion case (No. 95-55434) were deemed to have joined in Shea & Gould's motion to certify the July 12, 1994 Order. By an order filed on April 6, 1995, a motions panel of this court granted Shea & Gould's and Milberg Weiss' petitions for permission to appeal pursuant to 28 U.S.C. § 1292(b). On July 19, 1995, the district court stayed all discovery pending the outcome of this appeal.
 
 II
 
 12
 As a threshold matter, we must determine whether we have jurisdiction over the claims raised in the companion case of Durkin v. Milberg Weiss (No. 95-55434).
 
 
 13
 The appellants in Milberg Weiss were the representative shareholder plaintiffs[8] and their attorneys in the Shields litigation. Before the district court, Appellee Durkin asserts (1) breach of fiduciary duty claims against the shareholder plaintiffs; and (2) fraudulent transfer claims against both the shareholder plaintiffs and their attorneys based on their receipt of settlement proceeds. The shareholder plaintiffs and their attorneys argue that res judicata bars all of Durkin's claims against them.
 
 
 14
 The fiduciary duty and fraudulent transfer claims are the subject of district court orders that are not before us.[9] In addition, we note that the district has not certified for appeal its December 1, 1993 Order dismissing Durkin's malpractice claims against the shareholder plaintiffs' attorneys. The only proper subject of this appeal is the section of the July 12, 1994 Order in which the district court denied Shea & Gould's motion for summary judgment or partial summary judgment on Durkin's malpractice claim.
 
 
 15
 It is true that the issue submitted by Shea & Gould to the district court for certification appears to be broad ("[whether the final judgment approving the Shields settlement] conclusively determined as a matter of law the fairness, reasonableness, and adequacy to ICA of the Shields settlement and the terms therein"). It is also true that the shareholder plaintiffs and their attorneys filed a memorandum in support of Shea & Gould's motion to certify, and that the district court deemed this memorandum a "joinder in the Shea defendants' motion to certify." However, in its order granting certification, the district court emphasized that the "issue upon which Shea defendants seek certification arises out of this Court's July 12, 1994 Order denying Shea defendants' motion for summary judgment."[10]
 
 
 16
 Since an appeal under section 1292(b) "is from the certified order, [and] not from any other orders that may have been entered in the case," United States v. Stanley, 483 U.S. 669, 677, 107 S.Ct. 3054, 3060, 97 L.Ed.2d 550 (1987),[11] we lack jurisdiction to consider the shareholder plaintiffs and their attorneys' arguments concerning the fiduciary duty and fraudulent transfer claims. See also Swint v. Chambers County Comm'n, 514 U.S. 35, ----, 115 S.Ct. 1203, 1211, 131 L.Ed.2d 60 (1995) (citing Stanley, 483 U.S. at 676-77, 107 S.Ct. at 3059-60) ("appellate review [is] limited to the certified order; issues presented by other, noncertified orders could not be considered simultaneously").[12] Moreover, since the district court's dismissal of the malpractice claims against the shareholder plaintiffs' attorneys has not been certified for appeal, we do not even have jurisdiction to consider these claims. See Libby, McNeill, & Libby v. City Nat'l Bank, 592 F.2d 504, 511 (9th Cir.1978) ("a party may only appeal to protect its own interests, and not those of a co-party").[13] Accordingly, we dismiss the appeal in No. 95-55434 for lack of appellate jurisdiction.
 
 III
 
 17
 We now consider the applicability of issue preclusion to Durkin's malpractice claims against Shea & Gould in the lead case (No. 95-55432).
 
 
 18
 The doctrine of issue preclusion (collateral estoppel) bars relitigation of issues "actually litigated and necessarily determined by a court." Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518 (9th Cir.1985) (citing Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). Issue preclusion applies in "subsequent suits based on a different cause of action involving a party to the prior litigation." Montana, 440 U.S. at 153, 99 S.Ct. at 973.
 
 
 19
 The Supreme Court has recognized that special circumstances--such as "reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation"--may "warrant an exception to the normal rules of preclusion." Id. at 155, 164 n. 11, 99 S.Ct. at 974-75, 979 n. 11. In short, the parties must have had "a full and fair opportunity to litigate." Id. at 153, 99 S.Ct. at 973; see Kremer v. Chemical Constr. Co., 456 U.S. 461, 480-81 & n. 22, 102 S.Ct. 1883, 1897 & n. 22, 72 L.Ed.2d 262 (1982) (citations omitted) ("collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue [in the earlier case]"). Furthermore, this court has stated that "[i]f there is doubt, ... collateral estoppel will not be applied." Davis & Cox, 751 F.2d at 1518 (citation omitted).
 
 
 20
 * In the district court, Shea & Gould argued that Magistrate Judge McCue's approval of the Shields settlement conclusively resolved the fairness, adequacy, and reasonableness of the settlement as to ICA and the adequacy of the shareholder plaintiffs' representation of ICA, thus precluding relitigation of issues crucial to Durkin's malpractice claim against Shea & Gould.
 
 
 21
 The district court provided five reasons for denying Shea and Gould's motion.
 
 
 22
 First, the court concluded that neither claim nor issue preclusion applies to Durkin because he did not have a "full and fair opportunity" to litigate the adequacy of the settlement. See Kremer, 456 U.S. at 480-81 & n. 22, 102 S.Ct. at 1897 & n. 22.
 
 
 23
 Second, the court held that the "prior adjudication of the adequacy of a settlement does not collaterally estop a legal malpractice claim challenging the conduct of a party's lawyer during the prior action because the essence of such a claim is that the Court's decision approving the settlement would have been different absent the negligence of the party's attorney." See Ruffalo v. Patterson, 234 Cal.App.3d 341, 285 Cal.Rptr. 647, 648 (1991).
 
 
 24
 Third, the court concluded that Durkin is not precluded from claiming that Shea & Gould inadequately represented ICA because "that issue was not actually litigated in the underlying actions." The court noted that the legal malpractice claim did not even accrue until the settlement became final and that Durkin could not have asserted the claim until he was appointed representative of the ICA bankruptcy estate. See Davis & Cox, 751 F.2d at 1518.
 
 
 25
 Fourth, the court stated that "any finding by Judge McCue as to the adequacy of the derivative shareholder plaintiffs' representation of ICA is not dispositive of the issue of whether the Shea Defendants breached any duty owed to ICA."
 
 
 26
 Fifth, the court concluded that the issue of whether Shea & Gould breached any duty to ICA in connection with the Shields litigation is a "factual issue that can only be properly resolved once the relevant discovery ... can be reviewed."
 
 B
 
 27
 On appeal, Shea & Gould argues that the district court erred because (1) the basic elements of issue preclusion are present; (2) ICA had a "full and fair opportunity" to litigate; (3) issue preclusion is not made unavailable to Shea & Gould simply because it represented ICA as a nominal defendant; and (4) Durkin's collateral attack threatens important public interests. These arguments lack merit and will be addressed in turn.
 
 
 28
 * The elements of issue preclusion are: (1) the issue decided in the prior adjudication is substantially identical to the issue in the subsequent action; (2) there was a final judgment on the merits; and (3) the party against whom the estoppel is asserted was a party to or in privity with a party in the first action. Pension Trust Fund for Operating Eng'rs v. Triple A Machine Shop, Inc., 942 F.2d 1457, 1462 (9th Cir.1991) (citations omitted).
 
 
 29
 It is undisputed that the second (final judgment) and third (privity) elements of issue preclusion are present here. The Shields settlement was court-approved and entered as a final judgment. Durkin is in privity with ICA, a party to the Shields settlement, because Durkin claims that ICA assigned its malpractice claims to him. The only element in dispute is the first (identical issue).
 
 
 30
 Under California law, the plaintiff bringing a malpractice action must prove (1) the existence of a duty; (2) the negligent act or omission; (3) the proximate causation of plaintiff's damages; and (4) the measure of damages. Sukoff v. Lemkin, 202 Cal.App.3d 740, 249 Cal.Rptr. 42, 44 (1988). Shea & Gould asserts that in order to prove causation and damages, Durkin must prove that at the time of the settlement, the settlement was not reasonable and that the defendants would have agreed to pay a greater amount than they actually paid. See id. 249 Cal.Rptr. at 47-48. Shea & Gould argues that Magistrate Judge McCue's finding that the settlement was fair, reasonable, and adequate necessarily and actually decided the causation and damages issues that Durkin is now attempting to litigate, thus precluding Durkin from establishing elements crucial to his malpractice action.
 
 
 31
 We are not persuaded by Shea & Gould's argument that Durkin's malpractice action raises the same issues actually and necessarily decided by Magistrate Judge McCue. In fact, Durkin's malpractice action raises two distinct issues that were not decided by Magistrate Judge McCue: (1) whether Shea & Gould adequately represented the interests of ICA, with particular regard to ICA's obligations to its creditors at a time when ICA was either insolvent or perilously close to insolvency; and (2) whether the Shields settlement was reasonable for the purposes of a malpractice suit.
 
 
 32
 First, as required by Rule 23.1, Magistrate Judge McCue determined that the shareholder plaintiffs adequately represented similarly situated shareholders. See Larson v. Dumke, 900 F.2d 1363, 1367 (9th Cir.), cert. denied sub nom. Round Table Pizza, Inc. v. Larson, 498 U.S. 1012, 111 S.Ct. 580, 112 L.Ed.2d 585 (1990). Magistrate Judge McCue did not decide that the shareholder plaintiffs and their attorneys adequately represented the full corporate interests of ICA; nor did Magistrate Judge McCue specifically find that Shea & Gould adequately represented the interests of a corporation on the eve of its bankruptcy. Moreover, as the district court correctly stated, Durkin's malpractice action did not even accrue until the settlement was final. See Davis & Cox, 751 F.2d at 1518.
 
 
 33
 Second, the issue of whether a settlement was "fair and adequate" for the purposes of Rule 23.1 is not the same issue as whether the settlement was reasonable in light of alleged malpractice by the participating attorneys. As the New Jersey Supreme Court concluded: "The fact that a party received a settlement that was 'fair and equitable' does not mean necessarily that the party's attorney was competent or that the party would not have received a more favorable settlement had the party's incompetent attorney been competent." Ziegelheim v. Apollo, 128 N.J. 250, 607 A.2d 1298, 1305 (1992); accord In re Danelson, 142 B.R. 932, 938-39 (Bankr.D.Mont.1992); Ruffalo v. Patterson, 285 Cal.Rptr. at 648; Garcia v. Borelli, 129 Cal.App.3d 24, 180 Cal.Rptr. 768, 772 (1982).
 
 2
 
 34
 Shea & Gould contends that ICA had a "full and fair opportunity" to litigate because (1) Rule 23.1 procedures protected ICA's interests; and (2) the shareholder plaintiffs represented ICA's interests in the Shields litigation. See Breswick & Co. v. Briggs, 135 F.Supp. 397, 403 (S.D.N.Y.1955) (footnote omitted) ("the 'real party in interest' in ... derivative actions is the corporation itself but the real parties in litigation are those stockholders who are undertaking the trouble and expense of establishing the rights of the corporation"). Shea & Gould relies on Magistrate Judge McCue's determinations that the shareholder plaintiffs adequately represented the class and that the settlement was fair, adequate, and reasonable as to ICA and its shareholders. We are not persuaded that these arguments justify precluding a malpractice action.
 
 
 35
 Durkin alleges that the imminent seizure of ISA and bankruptcy of ICA gave all of the parties to the Shields settlement "powerful reasons--not disclosed to the Magistrate--to push a quick settlement through the court before the seizure and bankruptcy placed the corporation and its assets under the protection of the bankruptcy court, the RTC, and ICA's trustee." Further, Durkin alleges a number of nondisclosures and conflicts of interest, including the retention of Shea & Gould by ICA Board Chairman and Shields defendant Allan R. Tessler, who was also "of counsel" to Shea & Gould at the time of the Shields litigation.
 
 
 36
 Since a malpractice action does not even accrue until after the settlement becomes final, it necessarily follows that the Shields proceedings could not have provided Durkin with a "full and fair opportunity" to litigate the adequacy of the settlement for the purposes of a subsequent malpractice action. See Ruffalo, 285 Cal.Rptr. at 648.[14]
 
 3
 
 37
 Claiming that the district court misunderstood the basic principles of shareholder derivative litigation, Shea & Gould stresses that it "never was asked to represent ICA's interests as a plaintiff, never purported to do so, and there was absolutely no evidence before the district court that it undertook a duty to do so." Rather, Shea & Gould asserts that ICA retained the firm to provide services to ICA "as a nominal defendant" in the derivative actions. As such, Shea & Gould asserts that the firm had "no duty to maximize ICA's recovery as a plaintiff" because the firm represented ICA "only as a nominal defendant."
 
 
 38
 The shareholder plaintiffs, according to Shea & Gould, prosecuted the interests of ICA as a plaintiff.[15] Thus, Shea & Gould argues that it could not have affected the derivative actions' outcome from ICA's perspective as a plaintiff. The firm further contends that no general rule of law supports the district court's conclusion that Shea & Gould should be denied the benefit of issue preclusion from a judgment that allegedly resulted from the firm's purported malpractice. These arguments lack merit.
 
 
 39
 First, the existence and nature of any duties owed by Shea & Gould to ICA raise questions of fact that are not properly before us. As the district court concluded, "whether the Shea defendants breached any duty to ICA in connection with the Shields litigation and settlement is a factual issue that can only be properly resolved once the relevant discovery, which has barely begun, can be reviewed."
 
 
 40
 Second, although the California courts have not considered issue preclusion in the context of a Rule 23.1 settlement, they have consistently held that a court-approved settlement or judgment does not immunize an attorney from a subsequent malpractice action. See, e.g., Ruffalo, 285 Cal.Rptr. at 648 (involving court-approved settlement); Garcia v. Borelli, 180 Cal.Rptr. at 772 (same); Pete v. Henderson, 124 Cal.App.2d 487, 269 P.2d 78, 79-80 (1954) (involving final judgment); accord In re Danelson, 142 B.R. at 939 (involving court-approved settlement). As the California Court of Appeal has observed: "To hold otherwise would be to rule that where an attorney's negligence has caused a court to make an erroneous adjudication of an issue, the fact that the court has made that adjudication absolves the attorney of all accountability and responsibility for his negligence." Ruffalo, 285 Cal.Rptr. at 648.
 
 
 41
 Of course, it is true that courts have precluded subsequent derivative claims by class members collaterally attacking settled derivative actions, see, e.g., Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1557-58 (3d Cir.), cert. denied, 513 U.S. 986, 115 S.Ct. 480, 130 L.Ed.2d 393 (1994), but here Durkin is clearly not bringing a subsequent derivative action. Furthermore, Shea & Gould's reliance on Valerio v. Boise Cascade Corp., 80 F.R.D. 626 (N.D.Cal.1978), aff'd, 645 F.2d 699, 700 (9th Cir.) (adopting district court's opinion), cert. denied, 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981), is misplaced because Valerio is clearly distinguishable. In Valerio, class members (who had elected not to opt out) alleged malpractice in an effort to reopen a settlement in which they had participated. Contrary to Shea & Gould's assertion that the court applied res judicata to bar the malpractice claims, the court in fact barred the claims on the grounds that the relevant statute of limitations had run. 80 F.R.D. at 632.[16]
 
 4
 
 42
 Finally, Shea & Gould argues that Durkin's malpractice action threatens important public interests in (1) encouraging settlement;[17] (2) enforcing finality and avoiding repetitious litigation; and (3) implementing the policies underlying Rules 23 and 23.1.[18]
 
 
 43
 Indeed, courts have recognized the interests asserted by Shea & Gould, but courts have also stressed that special circumstances may "warrant an exception to the normal rules of preclusion," see Montana, 440 U.S. at 155, 163, 99 S.Ct. at 974-75, 978-79, and that attorneys are not immunized from malpractice suits simply because they arranged a court-approved settlement, see Ruffalo, 285 Cal.Rptr. at 648.
 
 
 44
 In short, we hold that a court-approved, shareholder derivative settlement pursuant to Rule 23.1 does not immunize participating attorneys from subsequent malpractice actions.
 
 IV
 
 45
 For the foregoing reasons, we affirm the district court's July 12, 1994 Order in Durkin v. Shea & Gould, and dismiss the appeal in Durkin v. Milberg Weiss for lack of appellate jurisdiction.
 
 
 46
 No. 95-55432 AFFIRMED.
 
 
 47
 No. 95-55434 DISMISSED for lack of appellate jurisdiction.
 
 
 
 *
 The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation
 
 
 [1]
 Today, we also decide the related case of FDIC v. Alshuler, 92 F.3d 1503 (9th Cir.1996)
 
 
 [2]
 On February 28, 1990, ICA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Under ICA's Chapter 11 reorganization plan, ICA transferred certain assets to the Benchmark Irrevocable Trust, of which Durkin is the court-appointed trustee. Durkin claims authorization to assert all rights of ICA and its bankruptcy estate, and to investigate and pursue ICA's claims against its former directors, officers, and attorneys
 
 
 [3]
 Shields v. Thygerson, Civ. No. 89-0126-JLI(M) (S.D.Cal. Feb. 22, 1990)
 
 
 [4]
 The firm is now known as Milberg, Weiss, Bershad, Hynes & Lerach
 
 
 [5]
 All members of ICA's board were named defendants in the Shields suit. According to Durkin, each director "faced personal exposure exceeding $100 million."
 
 
 [6]
 Under Federal Rule of Civil Procedure 23(e), the district court determines whether a proposed settlement is "fundamentally fair, adequate, and reasonable." In re Pacific Enters. Sec. Litig., 47 F.3d 373, 377 (9th Cir.1995) (internal quotation marks and citations omitted). Rule 23.1 provides that a shareholder derivative action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Rule 23.1 also requires that "[t]he action shall not be dismissed or compromised without the approval of the court." Fed.R.Civ.P. 23.1. "Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir.) (internal quotation marks and citations omitted), cert. denied sub nom. Hoffer v. City of Seattle, 506 U.S. 953, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992)
 
 
 [7]
 Shea & Gould is also in bankruptcy. On December 22, 1995, the firm filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. On February 21, 1996, the Bankruptcy Court modified the automatic stay for the sole purpose of allowing Shea & Gould to proceed with this appeal, pursuant to section 362(d)(1) of the Bankruptcy Code. See Notice of Relief From Automatic Stay exhibit C (filed Mar. 11, 1996)
 
 
 [8]
 Rodney B. Shields, Three Bridges Investment Group, William Steiner, Sonem Partners, and Max Grill
 
 
 [9]
 For example, in a February 24, 1993 Order, the district court declined to dismiss the fraudulent transfer claims as a collateral attack on the settlement barred by res judicata, holding that ICA lacked a "full and fair" opportunity to litigate. The district court has not certified this order for appeal
 
 
 [10]
 The district court specifically noted that "the preclusive effect of a court-approved settlement on subsequent claims for legal malpractice raises slightly different legal issues and requires looking at precedent other than that discussed in [another order issued by the district court]."
 
 
 [11]
 "Even if the Court of Appeals' jurisdiction is not confined to the precise question certified by the lower court (because the statute brings the 'order,' not the question, before the court), that jurisdiction is confined to the particular order appealed from." Stanley, 483 U.S. at 677, 107 S.Ct. at 3060
 
 
 [12]
 Of course, we "may address those issues material to the order from which appeal has been taken." In re Cinematronics, Inc., 916 F.2d 1444, 1449 (9th Cir.1990) (citations omitted). However, we reject Milberg Weiss' contention at oral argument that the district court's earlier order (declining to dismiss Durkin's fraudulent transfer claims) was somehow certified for appeal because the July 12, 1994 Order contains a passing reference to the earlier order
 
 
 [13]
 See Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1214 (9th Cir.1987) (citing Fed.R.Civ.P. 12(h)(3)) ("A motions panel of this court previously ruled that we had jurisdiction here under 28 U.S.C. § 1292(a)(1). We cannot agree, however, and are bound to note a defect in appellate jurisdiction whenever one appears."), cert. dismissed sub nom. Federal Sav. & Loan Ins. Corp. v. Stevenson Assoc., 488 U.S. 935, 109 S.Ct. 358, 102 L.Ed.2d 349 (1988)
 
 
 [14]
 See generally Deborah A. Klar, The Settlement of Class and Derivative Actions on the Eve of Bankruptcy, 659 Practising Law Institute/Commercial Law and Practice Course Handbook Series 389 (PLI Order No. A4-4416) (May-June 1993) ("[A] variety of claims may be successfully asserted against the participants [in a "settlement on the eve of bankruptcy"]. For example, they may be subject to liability ... for breach of duty or malpractice.")
 
 
 [15]
 See Kamen v. Kemper Fin. Servs., 500 U.S. 90, 95, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991) (citations omitted) ("The derivative form of action permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.' Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation....")
 
 
 [16]
 Shea & Gould's reliance on In re One Bancorp Sec. Litig., 151 B.R. 1, 3 (D.Me.1993), and In re Pinto Trucking Serv., 93 B.R. 379, 389-90 (Bankr.E.D.Pa.1988), is also misplaced. Both cases addressed whether litigants could make sufficient showings of constructively fraudulent transfers under the Bankruptcy Code; neither case concerned malpractice. See In re Pinto, 93 B.R. at 390 (noting that "all of the neutral participants ... strongly recommended [the settlement]" and that there was "no suggestion that 'fraud or collusion' played any role in the negotiation of the settlement")
 
 
 [17]
 See In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir.1995) (internal quotation marks and citation omitted) (noting "strong judicial policy that favors settlement")
 
 
 [18]
 See Valerio, 80 F.R.D. at 649 ("[R]estricting the res judicata effect of class action settlements would lessen a defendant's incentive to settle....")